472 So.2d 847 (1985)
Gailyn W. WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. AZ-299.
District Court of Appeal of Florida, First District.
July 15, 1985.
*848 Raymond L. Syfrett of Syfrett and Trollope, Panama City, for appellant.
Jim Smith, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellee.
BARFIELD, Judge.
Appellant seeks review of a judgment of forfeiture of her automobile, arguing that the trial court erred when it found from the evidence that appellant either knew or should have known that the vehicle was used for narcotics trafficking. We agree with appellant and reverse.
The evidence showed that on the evening of February 29, 1984, Jackie Vathis, a long-time friend of appellant, telephoned Ms. Wheeler and asked to borrow her 1977 Pontiac Bonneville because Vathis' own car was broken down. It was apparently established practice for Mrs. Vathis and Ms. Wheeler to lend each other their cars in such circumstances. Ms. Wheeler told Mrs. Vathis that she did not need the car back until the next morning; Mrs. Vathis later telephoned Ms. Wheeler and said that her husband, Nick Vathis, had borrowed the car. This, too, was apparently not out of the ordinary and Ms. Wheeler did not object.
Later that same evening, Nick Vathis was seen at the site of a narcotics transaction in Tallahassee. He eluded capture at that time but was arrested a few hours later in Blountstown. Approximately five pounds of cannabis were found in the trunk of the Bonneville. Vathis was arrested and the state sought forfeiture of the auto pursuant to Florida law.[1]
In support of its petition, the state introduced the testimony of a Panama City Police Department narcotics investigator who stated that Nick Vathis had the reputation in Bay County as a drug dealer. He also testified that on February 16, 1984, he purchased cocaine from a man named Zengri at the No Name Lounge and that Zengri got into appellant's car and drove to the Castaway Lounge after the transaction. The witness stated that Zengri, like Vathis, was a reputed drug dealer.
Jackie Vathis testified that Ms. Wheeler occasionally lent her car to friends. She also stated her husband worked as an auto mechanic and had never been arrested on drug charges prior to February 29, 1984.
Appellant testified that she lent her car to friends who needed transportation and to customers at the Castaway Lounge where she worked. The lounge is located on the water and customers often arrive by boat; appellant sometimes lent her car to these people if asked. She stated that she had no knowledge that Vathis or Zengri or anyone else to whom she lent the car was involved in the drug trade.
The outcome of this appeal is controlled by the application of Fla. Stat. section 932.703(2) (1983) to the facts presented below. That statutory section provides:
No property shall be forfeited under the provisions of ss. 932.701-932.704 if the owner of such property establishes that he neither knew nor should have known after a reasonable inquiry that such property was being employed or was likely to be employed in criminal activity.
We believe that Ms. Wheeler did establish that she "neither knew nor should have *849 known after a reasonable inquiry" that her auto "was being employed or was likely to be employed" to transport drugs. By her own testimony, she did not know of Nick Vathis' intent to use her car for illegal purposes. We also find that the "reasonable inquiry" standard was met where a long-time friend asked to borrow a car to run household errands while her own car was under repair, a practice that had been followed and reciprocated several times in the past without incident. We also find little probative value to the investigator's testimony that Vathis was a reputed drug dealer where Vathis had no arrest record and appellant testified she knew of no such reputation. We doubt that, in the absence of very unusual circumstances, any given individual would have a reputation as a drug dealer among the general population of a community if he had never been arrested on drug-related charges. We therefore construe the investigator's testimony to relate to Vathis' reputation in the law enforcement community of Bay County, information to which there was no showing that Ms. Wheeler had or should have had access. Likewise, we find the evidence regarding Zengri's reputation has little probative value to establish what Ms. Wheeler knew or should have known about the loan of her car to Mrs. Vathis.
Despite our traditional deference to the trial court's role as finder of fact, we find the record before us, taken in its totality, establishes that Ms. Wheeler neither knew nor should have known of the illegal use to which Nick Vathis put her vehicle. Accordingly, the judgment of forfeiture is REVERSED.
WENTWORTH, J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting with opinion.
In my judgment the majority has failed to place the proper legal significance upon the statutory provision added to Section 932.703(2), Florida Statutes, by Chapter 80-68, Section 3, Laws of Florida. The former forfeiture provisions, Sections 943.41 through 943.44; Florida Statutes (1975), were interpreted as permitting vehicle forfeiture only upon a showing of a "`nexus between the illegal drugs found in the car and the furtherance of an illegal drug "operation".'" Griffis v. State, 356 So.2d 297, 302 (Fla. 1978) (quoting In re Forfeiture of 1972 Porsche, 307 So.2d 451, 452 (Fla. 3d DCA 1975)). Although I am well aware of the general rule that forfeitures are considered harsh exactions, and therefore statutes authorizing forfeitures must be strictly construed, General Motors Acceptance Corp. v. State, 152 Fla. 297, 11 So.2d 482 (1943), I do not consider that the majority has taken proper account of the "knew nor should have known" language of Section 932.703(2). If the majority interprets section 932.703(2) as placing the burden upon the government to establish the owner's actual knowledge of her automobile's involvement in criminal activity, I submit such a construction is at variance with a plain reading of the statute.
I think it important to observe that had the statute in question explicitly provided for the vehicle's forfeiture, regardless of the owner's knowledge, no constitutional provision would necessarily have been implicated thereby. A long line of federal cases reflects the traditional view that the innocence of the owner of property subject to forfeiture is not a defense to the forfeiture. See, e.g., The Palmyra, 25 U.S. (12 Wheat.) 1, 14, 6 L.Ed. 531 (1827); United States v. Brig Malek Adhel, 43 U.S. (2 How.) 210, 233, 11 L.Ed. 239 (1844); Dobbins's Distillery v. United States, 96 U.S. (6 Otto) 395, 401-02, 24 L.Ed. 637 (1878); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); United States v. One 1973 Buick Riviera Automobile, 560 F.2d 897, 900 (8th Cir.1977); United States v. One 1975 Ford F100 Pickup Truck, 558 F.2d 755, 757 (5th Cir.1977). Without specifically so deciding, the Supreme Court in Calero-Toledo indicated that "serious constitutional questions" might arise from any interpretation of a forfeiture statute which permitted forfeiture if (1) the property subject to the forfeiture had been taken from *850 the owner without his consent, or (2) the owner "proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property". 416 U.S. at 689, 94 S.Ct. at 2094, 40 L.Ed.2d at 471 (e.s.). The Court, however, was satisfied that the government's evidence, showing that the owner had voluntarily leased its vessel to others without further inquiry, was sufficient to meet the statutory burden that the owner had not done "all that it reasonably could to avoid having its property put to an unlawful use." Id. at 690, 94 S.Ct. at 2095, 40 L.Ed.2d at 472.
Admittedly, the federal statutes, particularly 19 U.S.C. § 1595a, 21 U.S.C. § 881(a)(4), and 49 U.S.C. § 782, relating to forfeiture, do not have any provision, as does the Florida statute, relating to scienter. Section 932.703(2) represents an apparent accommodation between the federal rule requiring forfeiture, regardless of an owner's knowledge, and the former state rule placing the burden on the government to demonstrate that the owner had actual knowledge that his property had been employed in criminal activity. "[T]he Act now imposes upon the innocent owner or lien-holder the affirmative burden to establish absence of scienter." "The Florida Contraband Forfeiture Act", 57 Fla.B.J. 550, 552-53 (1983). The governmental entity seeking forfeiture has the initial burden of showing "probable cause that the res subject to forfeiture was illicitly used within the meaning of the forfeiture statute." In re Forfeiture of Approximately Forty-Eight Thousand Nine Hundred Dollars ($48,900.00) In U.S. Currency, 432 So.2d 1382, 1385 (Fla. 4th DCA 1983). If the government presents sufficient proof of the vehicle's illegal use, the burden next shifts to the owner to establish the affirmative defense required by section 932.703(2). The record clearly shows the state met its initial burden, by proving that appellant's car was being used to transport, conceal or possess contraband, i.e., five pounds of cannabis. Cf. Department of Highway Safety & Motor Vehicles v. Pollack, 462 So.2d 1199, 1202 (Fla. 3d DCA 1985). It therefore became incumbent upon appellant, in order to rebut the probable cause showing, to prove, by a preponderance of the evidence, that she either did not know, or should not have known, following a reasonable inquiry, that her vehicle would be used for criminal activity. In my judgment, appellant failed to meet her burden.
The record in the case at bar clearly establishes that on numerous occasions appellant, an employee at a cocktail lounge in Panama City, lent her car, in exchange for tips, to acquaintances and casual customers at the lounge. In fact, two weeks before the seizure of her automobile, she had lent it to one Frank "Lucky" Zengri, a person known by law enforcement officers in Bay County as having the reputation of dealing in cocaine. After borrowing appellant's car, Zengri drove it approximately 250 yards to the parking lot of another lounge, and there sold an ounce of cocaine to an undercover investigator. On the day following Zengri's arrest for this offense, appellant voluntarily entrusted her car to Jackie Vathis, wife of Nick Vathis. Jackie turned possession of the vehicle over to Nick, who in turn used it to transport marijuana. Although Jackie stated that appellant had not given permission for Nick personally to drive the automobile, appellant, Jackie admitted, had known in the past that Nick had used it, and she "doesn't mind which one of us drives it." This evidence clearly establishes a reckless or indifferent attitude on the part of appellant to comply with the statutory mandate that she make reasonable inquiry to see to it that her automobile not be used for potential criminal activity.
I contend that the statute before us should be interpreted in a manner similar to that placed upon Section 561.29(1), Florida Statutes, allowing the Division of Alcoholic Beverages and Tobacco to revoke or suspend a beverage license upon a showing that either the licensee or his agents have repeatedly violated the laws of the state on the licensed premises. Although the pertinent decisions have declined to uphold revocations *851 on evidence disclosing that on only one occasion the licensee's employees violated the laws or that the licensee otherwise took measures to comply with them, see, e.g., G & B of Jacksonville, Inc. v. State, Department of Business Regulation, 366 So.2d 877 (Fla. 1st DCA 1979); Woodbury v. State Beverage Department, 219 So.2d 47 (Fla. 1st DCA 1969); Taylor v. State Beverage Department, 194 So.2d 321 (Fla. 2d DCA), cert. denied, 201 So.2d 464 (Fla. 1967), if however, the laws were repeatedly and flagrantly violated by employees, the Division may properly conclude that such violations were fostered, condoned or negligently overlooked by the licensee, notwithstanding his absence from the premises when the violations occurred. Pauline v. Lee, 147 So.2d 359, 364 (Fla. 2d DCA 1962), cert. denied, 156 So.2d 389 (Fla. 1963); see Lash, Inc. v. State, Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982); Golden Dolphin No. 2, Inc. v. State, Division of Alcoholic Beverages and Tobacco, 403 So.2d 1372 (Fla. 5th DCA 1981).
I see no reason why the same construction, applied to statutes regulating beverage licenses, should not also be placed upon section 932.703(2). Statutes relating to revocation of beverage licenses and forfeiture of property are both required to be strictly construed because they are considered penal in nature, Bach v. Florida State Board of Dentistry, 378 So.2d 34, 36 (Fla. 1st DCA 1979), nevertheless beverage licenses, as previously observed, may be revoked under circumstances disclosing that the owner's conduct reflects a reckless disregard of the requirement that the laws not be violated.
In the present case, the record reveals a similar indifference by appellant of the duty to take reasonable care that her property not be used in criminal activity. As in In re Forfeiture of 1979 Lincoln Continental, 405 So.2d 249, 250 (Fla. 3d DCA 1981), the trial judge below could properly find that appellant's "self-serving" recital of the circumstances under which she entrusted her vehicle to others did not meet the affirmative burden imposed upon her by statute. The court below heard the evidence, and found it sufficient to forfeit appellant's vehicle. I would not now disturb that judgment on appeal.
NOTES
[1] The state's petition incorrectly cited the "Florida Uniform Contraband Transportation Act," Fla. Stat. sections 943.41-.44 (1979). The statute was amended and renamed the "Florida Contraband Forfeiture Act" in 1980. 1980 Fla.Laws, ch. 80-68, sections 1-4. The act was renumbered to sections 932.701-.704 of the Florida Statutes in 1981. Despite the erroneous citation by the state in its petition, the trial court used the phrase "knew or should have known" in announcing its decision, suggesting that the court applied the proper legal standard.