578 So.2d 715 (1990)
Randall C. BYROM, Appellant,
v.
Walt GALLAGHER, Etc., Appellee.
No. 90-77.
District Court of Appeal of Florida, Fifth District.
October 11, 1990.
On Motion for Rehearing and Certification May 9, 1991.
David Paul Horan of David Paul Horan & Associates, P.A., Key West, for appellant.
*716 J. Edwin Mills and Margaret S. Marshall, Orlando, for appellee.
PETERSON, Judge.
Randall C. Byrom appeals a final judgment of forfeiture of a Piper Seneca aircraft in favor of the Sheriff of Orange County. We affirm.
The parties submitted the stipulated facts to the judge at the hearing on the rule to show cause. Joseph A. Capuzzo, a/k/a Joseph A. Camillo, a secretary-treasurer of Worldwide Air Service, Inc., executed and delivered on November 1, 1988, a bill of sale of the Seneca in favor of Byrom. On November 7, 1988, Capuzzo borrowed the Seneca from Byrom in Fort Lauderdale to fly his attorney and himself to a sentencing hearing in Orlando. When Capuzzo learned that his hearing would not be continued at his request, he fled the courthouse and flew the Seneca to Pompano Beach. The Orange County court sentenced Capuzzo in absentia for the crimes for which he was to appear and ordered that the clerk issue a capias for failure to appear. Later that day, the Seneca was seized in Pompano Beach, the sheriff alleging that the aircraft was used in or connected with the act of failure to appear.
The bill of sale was sent to the Federal Aviation Administration in Oklahoma City for registration sometime after November 1, 1988, but the actual date it was sent is not in the record. On November 7, 1988, the date of seizure, the FAA records did not reflect the transfer, and the bill of sale was not clocked in by the FAA until November 15, 1988. The sheriff did give notice to the FAA on November 7, 1988, that the Seneca had been seized, but the FAA issued a certificate of aircraft registration to Byrom on December 1, 1988. The record does not reflect whether the sheriff's notice of seizure had an effect upon the FAA's acknowledgment or receipt of Byrom's transfer or the issuance of the certificate to him.
Although notified of the hearing, neither Capuzzo nor Worldwide Air Service, Inc., appeared at the forfeiture hearing to address the question of the use of the Seneca in the commission of a crime. We do not address that question since we agree with the trial court that Byrom had no standing to contest the forfeiture. Section 329.01, Florida Statutes (1987), provides:
No instrument which affects the title to or interest in any civil aircraft of the United States ... is valid in respect to such aircraft or portion thereof against any person, other than the person by whom the instrument is made or given, his heirs or devisees, and any person having actual notice thereof, until such instrument is recorded in the office of the Federal Aviation Administrator of the United States....
The statute concludes:
Any instrument required to be recorded by the provisions of this section takes effect from the date of its recordation and not from the date of its execution.
On November 7, the records of the FAA reflected Worldwide as the owner of the Seneca. The bill of sale indicating transfer to Byrom was not even "clocked in" at the FAA until 2:37 p.m. on November 15. The date of the forfeiture was November 7. Section 932.704, Florida Statutes (1987), provides that title is perfected in the sheriff as of the date of seizure since the final judgment relates back to that date. Lamar v. Wheels Unlimited, Inc., 513 So.2d 135 (Fla. 1987); see also Lauderdale Investments, Inc. v. Miller, 456 So.2d 539 (Fla. 5th DCA 1984). Byrom's failure to record his bill of sale prior to November 7, 1988, defeats his right to contest the validity of the forfeiture since section 329.01, Florida Statutes, prescribes that Byrom's bill of sale was effective from the date of its recordation, not from the date of its execution or the unknown date of mailing.
The final judgment of forfeiture is affirmed.
AFFIRMED.
HARRIS, J., and McNEAL, R.T., Associate Judge, concur.

*717 ON MOTION FOR REHEARING AND CERTIFICATION
Randall C. Byrom alleges in his motion for rehearing and suggestion for certification that this court erred in affirming the trial court's judgment forfeiting the Seneca airplane. Specifically, he alleges that:
(1) Our statement that November 7, 1988, was the date of forfeiture was a glaring error, and, if true, there would have been no need for the Orange County Sheriff to file a complaint on May 26, 1989, seeking forfeiture;
(2) For a forfeiture to have occurred, there must have been a determination that the airplane had been used in violation of statutory provisions; a court cannot dismiss this issue as irrelevant when determining standing; and
(3) To deny an owner of record standing to point out that there was no connection between the property seized and a crime would be to deny a bona fide purchaser the right to question the government's unsupported assertion that prior to the purchase the property was used as an instrumentality in the commission of a crime.
We address Byrom's allegations in the order presented:
1. The date of seizure of the Seneca was November 7, 1988, and the date of the judgment of forfeiture was December 5, 1989. Section 932.704(1), Florida Statutes (1987), provides in the last sentence of the subsection that "[t]he final order of forfeiture by the court shall perfect in the law enforcement agency right, title, and interest in and to such property and shall relate back to the date of seizure" (emphasis added). In section 932.703(1), Florida Statutes (1987), the legislature further addressed the date upon which the forfeiture occurs:
All rights and interest in and title to contraband articles or contraband property used in violation of s. 932.702 shall immediately vest in the state upon seizure by a law enforcement agency, subject only to perfection of title, rights, and interests in accordance with this act.
2. Only those who have standing to be heard in a judicial proceeding may participate in it. Trawick, Fla.Prac. & Proc. § 4-15. In a civil action, all defenses are deemed waived unless presented. Fla. R.Civ.P. 1.140(b). It follows that the defenses, if any, and the answer must come from one with standing to assert them. If Byrom had no standing to be heard and if no one else appeared to deny the claim by the sheriff, then the sheriff's allegations were deemed admitted and the judgment of forfeiture perfected the title. § 932.704, Fla. Stat. (1987). The real question is where to break the circle in managing the proceedings, to-wit: on the issue of standing, or the issue of whether the use of the property had a nexus with the crime? Unless the standing issue is decided initially, a trial court can never determine who may argue the nexus issue. Thus, the standing issue must be addressed first.
3. The last issue is troublesome. The Florida statute governing this forfeiture is not as potentially onerous as is the forfeiture provision of 49 United States Code Annotated App. section 782. In United States v. Stowell, 133 U.S. 1, 17-18, 10 S.Ct. 244, 247, 33 L.Ed. 555, 559 (1890), the Supreme Court held that a forfeiture takes place upon the commission of the criminal act "and the condemnation, when obtained, relates back to that time and avoids all intermediate sales and alienations, even to purchasers in good faith." See also Lauderdale Investments, Inc. v. Miller, 456 So.2d 539 (Fla. 5th DCA 1984).
Under the Florida scheme, bona fide purchasers who record their titles need not be concerned about the seizing agency's title relating back to the time of the crime. In Florida, there is some notice. Since the agency's title relates back to the seizure, lack of possession by the seller places a prospective purchaser on notice that a law enforcement agency may have possession. Admittedly, the Florida scheme does not eliminate all risks. A bona fide purchaser who parts with his money and mails or even physically carries the title transfer documents to the FAA in Oklahoma City risks loss of the airplane. The purchaser *718 may still lose title to the aircraft if a law enforcement agency seizes the aircraft before the title transfer document is recorded by the FAA. A solution to this risk of loss might be escrow closings whereby the proceeds of a sale are placed in the possession of a fiduciary and no money is received by the seller until it is verified that the title transfer is recorded by the FAA and that no seizure has occurred. Title insurance might also be in order, especially to insure a purchaser from loss due to forfeiture under federal law.
We are constrained by the decisions in Lamar v. Wheels Unlimited, Inc., 513 So.2d 135 (Fla. 1987), and the precedent in Lauderdale Investments, supra, to hold that Byrom lacks standing to contest the forfeiture. We note, however, that it was not made clear in Lamar, nor in the Second District case that it affirmed, In re: Forfeiture of One 1946 Lockheed L-18 Lodestar, 493 So.2d 10 (Fla. 2d DCA 1986), whether that appellant obtained record title before the forfeiture hearing. In the instant case, Byrom was able to obtain a certificate of title to the airplane after the seizure notwithstanding the sheriff's earlier notice to the FAA that the airplane had been seized. It was not clear from the record why Byrom was able to obtain title and why the FAA ignored the notice of forfeiture. Because Byrom was the record title holder at the forfeiture hearing, although not at the time of the seizure, and because forfeitures are becoming increasingly popular with law enforcement agencies, thus expanding the potential for loss by innocent purchasers, we certify the following question as a matter of great public concern:
DOES A BONA FIDE PURCHASER OF ALLEGED CONTRABAND PROPERTY IN WHICH HE HAS EQUITABLE BUT NOT PERFECTED INTEREST HAVE STANDING TO CONTEST A FORFEITURE OF SUCH PROPERTY IF IT IS SEIZED AS CONTRABAND BY A LAW ENFORCEMENT AGENCY PURSUANT TO SECTION 932.702, FLORIDA STATUTES (1987), WHEN THE PURCHASER'S RECORD TITLE IS PERFECTED SUBSEQUENT TO THE SEIZURE BUT PRIOR TO THE FORFEITURE PROCEEDING?
Motion denied; question certified.