695 So.2d 1283 (1997)
Alonzo MUNOZ, Appellant,
v.
The CITY OF CORAL GABLES, Appellee.
No. 96-2886.
District Court of Appeal of Florida, Third District.
June 25, 1997.
*1284 Oscar Arroyave and Bruce Lieberman, Miami, for appellant.
Parenti, Falk & Waas, P.A., and Norman M. Waas, and Gail Leverett Parenti, Coral Gables, for appellee.
Before NESBITT, LEVY and GREEN, JJ.
GREEN, Judge.
This is a civil forfeiture proceeding arising from the seizure of $85,803.00 in U.S. currency which is believed to have been used in connection with the trafficking of controlled substances. The currency was seized by appellee, City of Coral Gables ("City") from the home of appellant, Alonzo Munoz. Munoz appeals a non-final order finding that: (1) his request for an adversarial preliminary hearing on the issue of probable cause was waived by his failure to attend the hearing to establish his standing in this action; and (2) that there was probable cause for the seizure. Because the net effect of this order determined the immediate right to possession of the money, we have jurisdiction to review this non-final order pursuant to rule 9.130(3)(C)(ii), Fla. R.App. P.

I
The action below was instituted by the City's filing of its verified complaint for a judgment of forfeiture. According to the allegations contained in the verified complaint, the police received a tip on August 21, 1996, that Munoz was involved in narcotics trafficking and that he could be found at a pay phone located outside of a particular pharmacy in Hialeah. In response to this information, the police travelled to the specified location and spotted Munoz at the pay phone. They then watched as Munoz got into a vehicle and drove to a residence located at 19345 N.W. 61 Avenue. Munoz remained at the residence for approximately forty minutes and then drove to a shopping center located at N.W. 186 Street and N.W. 67 Avenue. There, the police observed Munoz making numerous phone calls from a public pay phone in front of a grocery store. To police officers, it appeared as if Munoz was dialing beeper numbers because he was observed repeatedly punching numbers into the telephone without conversing and then hanging up the receiver. He would subsequently pick up the receiver and talk. After approximately thirty-five minutes at this location, Munoz left and went home.
On the next day, or August 22, 1996, the police who by this time had placed Munoz's home under surveillance, followed Munoz to the Main Street shopping area of Miami Lakes. There, he was observed in the company of two white Latin males who were making and receiving numerous phone calls from public pay phones. The three subsequently left the area and Munoz was followed to the Windmill Shopping Mall at N.W. 67 Avenue and 183 Street where the police observed him making numerous phone calls *1285 from a pay phone in front of a food store. Five minutes later, Munoz travelled to a Wal-Mart store at another location where he was seen making numerous phone calls at a pay phone in the store's lobby. After approximately fifteen minutes, Munoz drove to a Hialeah business and from there, to a Burger King restaurant located at 2230 West 68 Street. He again made numerous phone calls from a parking lot pay phone at the Burger King.
Approximately forty minutes later, Munoz was followed to a cafeteria where he appeared to have eaten lunch. From there, Munoz drove to another Burger King restaurant at S.W. 107 Avenue and 9 Street where he again made numerous phone calls from a pay phone in the parking lot. Five minutes later, Munoz was followed to a strip shopping center at S.W. 107 Avenue and S.W. 24 Street where he made additional calls from a pay phone. Munoz then drove to a shopping mall located at S.W. 24 Street and 87 Avenue where he was observed picking up a young white Latin male. The two drove around the block and Munoz dropped the young man off at the same location. Munoz then returned to N.W. 122 Street and 17 Court where he made additional calls from public pay phones.
From there, Munoz returned to his home and later left carrying a briefcase. He drove to a linen store located at S.W. 122 Avenue and 99th Street where he was again observed making phone calls from the pay phone outside of the store. After five minutes, Munoz was seen walking over to a vehicle, greeting its driver and getting into the passenger side. Munoz was also seen putting a white bag into this vehicle; thereafter, Munoz and the driver drove around the block. Upon their return, Munoz got back into his car and the two proceeded to leave. The driver of this other vehicle was subsequently stopped and he identified himself as Ricardo Antonio Consuegra. After exiting his car, Consuegra gave the police permission to drive his car off of the roadway for safety purposes. While the police were in the process of moving this car, the police spotted the white bag on the rear floor board. In plain view, they saw that it contained numerous packs of currency bounded together with rubber bands. At that point, Consuegra, who was visibly nervous, stated that there was $100,000 in the white bag and that he had been paid $500 to accept the money from a person named "Junior". He further stated that he was to deliver this money to another person on another day. Thereafter, Consuegra consented to a search of his residence where the police ultimately recovered a large amount of U.S. currency which Consuegra stated had been given to him to deliver to another person at a later date.[1]
Munoz was also stopped by the police prior to exiting the parking lot and was told that the police were conducting a narcotics and money laundering investigation. Munoz consented to a search of both his car and residence. There is no indication that the police found either drugs or currency in Munoz's car. When the police arrived at his residence, however, the police found a shoe box containing approximately $55,000 in U.S. currency in Munoz's bedroom closet. Munoz's wife told the police that the money was not hers and denied having any knowledge of its presence there.
By contrast, it is alleged in the complaint that Munoz gave the following statements to the police at his home about the origin of the money:
First, he stated that the money was his and that he saved it during the past 11 years from his business. Subsequently, he changed his story and stated that he did not trust the bank so he kept it in the closet to buy things for his children. He then changed his statement once again and stated that he always paid in cash for his business expenses at "Color Marble, Inc." We then asked Mr. Munoz whether he had any receipts for the money transaction for his business expenses and he stated that he did not because he conducts all of his business matters using checks and not cash.
When asked by the police whether there was any more money in the closet, Munoz stated no. A narcotics detection dog, however, subsequently alerted the officers to the presence *1286 of additional money located inside of the closet. When this additional money was found by the police, Munoz then allegedly stated to the police that he did not think that he had to tell them about "that money." It is then alleged that the currency, totalling $85,803.00, was seized from Munoz's residence based upon Munoz's observed activities prior to the search as well as Munoz's varying statements about the source of this currency.

II
In a letter dated September 6, 1996, Munoz, through legal counsel, requested an adversarial preliminary hearing within ten days as prescribed by section 932.703(2)(a) (1995).[2] On September 11, 1996, the City petitioned the lower court for a post-seizure adversarial preliminary hearing. The hearing was then scheduled for September 19, 1996. On the day before the scheduled hearing, Munoz, through counsel, filed an unsworn general claim to the seized currency with the court. Specifically, the claim read as follows:
COMES NOW ALONZO MUNOZ, who, through his undersigned attorney, hereby makes claim to the Eighty-Five Thousand Eight Hundred Three Dollars (85,803.00) in United States currency seized by the Coral Gables and Metro-Dade Police Departments on August 22, 1996.
Munoz did not personally appear at the adversarial preliminary hearing but appeared only through counsel. The lower court entered an order finding that Munoz had failed to establish his standing by virtue of his failure to personally attend the hearing and that the City's allegations in the verified complaint were otherwise sufficient to establish probable cause for the seizure of the currency. Accordingly, the court directed Munoz to file a responsive pleading and affirmative defenses to the complaint, "including a short and plain statement demonstrating a valid property interest in that which is claimed, sufficient to confer standing to appear in this cause." Thereafter, Munoz's motion for reconsideration of denial of adversarial preliminary hearing was denied and this appeal followed.

III
Munoz asserts that the lower court's order was erroneous for two reasons. First, he argues that his personal appearance at the adversarial preliminary hearing was not necessary to establish his standing to contest the seizure. He further maintains that his standing was established from the City's verified complaint itself by virtue of its allegations, that the currency was seized from his residence, and that he asserted an ownership interest in the currency to the seizing officer. We agree with Munoz that his personal appearance at the adversarial preliminary hearing was not mandatory for the preliminary establishment of his standing to contest this action. However, we conclude that neither his unsworn claim filed in this action or his unsworn statements to the seizing officers were sufficient to confer standing upon him in the action below. We also find that the court properly concluded that there was probable cause for the seizure. Accordingly, we affirm the order under review.

IV
It is undisputed and established that to contest a forfeiture action, a party must first demonstrate an interest in the seized property sufficient to satisfy the court of the party's standing as a claimant. See Byrom v. Gallagher, 609 So.2d 24, 26 (Fla.1992) (only persons who have standing can participate in a judicial proceeding); see also In re Forfeiture of One 40' Fiberglass Boat White in Color with Black Bottom, Florida Registration FL0346EM, Hull No. Per 40014M1C, 453 So.2d 207, 208 (Fla. 4th DCA 1984) (court *1287 declined to entertain issues regarding whether crime was committed and whether the property seized was utilized during commission of crime where no appeal was taken of lower court's finding that claimant had no ownership interest in property); In re Forfeiture of a Cessna 401 Aircraft, N8428F, 431 So.2d 674, 675 (Fla. 4th DCA 1983), rev. denied, 444 So.2d 416 (Fla.1984) (court declined to address claimant's constitutional issues "because the claim of standing ... is so vacuous as to preclude such consideration."); United States v. Twenty Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand Dollars in U.S. Currency, 897 F.2d 1567, 1571 (11th Cir.1990); United States v. Five Hundred Thousand Dollars, 730 F.2d 1437, 1439 (11th Cir.1984) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture."). The burden of establishing standing in a forfeiture proceeding rests squarely with the claimant(s) to the seized property. See In re Forfeiture of 1983 Wellcraft Scarab, 487 So.2d 306, 309 (Fla. 4th DCA), cause dismissed, 494 So.2d 1150 (Fla.1986).
In an unverified pleading, Munoz merely made claim to the seized currency without asserting any possessory and/or ownership interest therein. At most, it can be said that Munoz was asserting a mere interest in the currency and we find this to be wholly insufficient to confer standing upon him to contest this forfeiture proceeding. See Five Hundred Thousand Dollars, 730 F.2d at 1439-40 (money changer had no cognizable interest in seized currency where he never asserted actual ownership to cash). It is clear to us from certain provisions of Chapter 932 that it was contemplated that standing could be conferred only upon the actual or titled owner(s) of the seized property or on those parties who had a perfected security interest to the property. See § 932.704(6)(a) and (c), Fla. Stat. (1995)[3]; see also In re Forfeiture of Approximately $19,050.00 In U.S. Currency, 519 So.2d 1134, 1135 (Fla. 5th DCA 1988); Wheeler v. State, 472 So.2d 847, 848-49 (Fla. 1st DCA 1985) (evidence did not establish owner either knew or should have known, after reasonable inquiry, her car was being employed or was likely to be employed to transport drugs where owner loaned her car to a long-time friend, who asked to borrow it to run household errands while her own car was under repair); Weisz v. Miami Shores Village, 461 So.2d 138, 140 (Fla. 3d DCA 1984) (record devoid of any testimony tending to show owner should have known driver and passenger, her friend and boyfriend, ever used, possessed or dealt in cocaine), rev. denied, 472 So.2d 1181 (Fla.1985); In re Forfeiture of Blue 1979 2-Door Toyota, Tag # DFJ-442, VIN # TE31377910, 441 So.2d 697, 698 (Fla. 4th DCA 1983) (forfeiture properly denied where substantial competent evidence supported the trial court's finding owner was unaware her son had taken her car and had possession of it at the time he committed a burglary); In re Forfeiture of 1979 Ford Truck, #VIN F14HNEC1331, 389 So.2d 310, 311 (Fla. 2d DCA 1980) (record contained nothing indicating that defendant knew methaqualone was in his truck, which was readily accessible to others; truck was not subject for forfeiture).
We also reject Munoz's argument that his standing was established by the allegations of the police contained in the City's verified complaint. Apart from the fact that Munoz, and not the seizing agency, has the specific burden of affirmatively establishing *1288 his standing, we first of all do not find Munoz's mere possession of the currency to be legally determinative of his possessory and/or ownership interest in the same. See In re: Forfeiture of Approximately $19,050.00 in U.S. Currency, 519 So.2d at 1135. We similarly do not find Munoz's unsworn oral statements to the seizing officers that the money was his to be sufficient to establish his standing to contest his proceeding. At a bare minimum, we conclude that a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceeding.
Thus, where Munoz failed to meet his burden of proving his standing, we find that the trial court correctly concluded that he had waived his right to an adversarial preliminary hearing. Moreover, based upon the undisputed allegations of the verified complaint, we find that the court correctly determined that the City had probable cause or reasonable grounds to believe that the currency had been used in the manner proscribed by Chapter 893, Florida Statutes (1995). For these reasons, we affirm the order under review.
Affirmed.
NOTES
[1] The money seized from Consuegra is the subject matter of a separate forfeiture proceeding.
[2] That section provides in relevant part that:

Personal property may be seized at the time of the violation or subsequent to the violation, if the person entitled to notice is notified at the time of the seizure or by certified mail, return receipt requested, that there is a right to an adversarial preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act.... When a postseizure, adversarial preliminary hearing as provided in this section is desired, a request must be made in writing by certified mail, return receipt requested, to the seizing agency. The seizing agency shall set and notice the hearing, which must be held within 10 days after the request is received or as soon as practicable thereafter.
[3] Section 932.704(6)(a) and (c) provide in relevant part that:

(6)(a) If the property is required by law to be titled or registered, or if the owner of the property is known in fact to the seizing agency, or if the seized property is subject to a perfected security interest in accordance with the Uniform Commercial Code, chapter 679, the attorney for the seizing agency shall serve the forfeiture complaint as an original service of process under the Florida Rules of Civil Procedure and other applicable law to each person having an ownership or security interest in the property.
* * * * * *
(c) The seizing agency shall be obligated to make a diligent search and inquiry as to the owner of the subject property, and if, after such diligent search and inquiry, the seizing agency is unable to ascertain any person entitled to notice, the actual notice requirements by mail shall not be applicable.