727 So.2d 1021 (1999)
Cedric FRASER, Appellant,
v.
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellee.
No. 97-2256.
District Court of Appeal of Florida, Fourth District.
February 17, 1999.
Rehearing Denied March 30, 1999.
*1022 Carl H. Lida of Law Offices of Carl H. Lida, P.A., Plantation, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, J.
In this forfeiture proceeding, appellant made a claim to the subject money by filing an affidavit which simply stated that the seized money belonged to him. The trial court determined that standing was a preliminary issue to be decided by the court and that the appellant's affidavit, alone, was insufficient to establish standing. While we agree that standing is a preliminary issue to be decided by the court and that appellant's affidavit was insufficient to establish standing, appellant is entitled to present evidence on this issue. We therefore reverse for an evidentiary hearing on this issue.
In 1993, a highway patrol trooper stopped a motor vehicle for a speeding violation. The vehicle was driven by and registered to Murph McNaughton, appellant's stepson. McNaughton allowed the trooper to conduct a consent search of the vehicle, during which the trooper found four large bundles of money that were secreted inside the front bumper of the vehicle. The money, totaling $41,500, was wrapped in fabric softener sheets and fastened by multiple rubber bands. All of the occupants of the vehicle denied having any knowledge of the money. The trooper seized the currency. Prior to the institution of any forfeiture proceedings, Fraser signed and sent to the Department a sworn affidavit *1023 stating that "the entire FORTY-ONE THOUSAND FIVE HUNDRED DOLLARS ($41,500) seized from Murph O.K. McNaughton on June 15, 1993, by Florida Highway Patrol Trooper Michael Van Leer in West Palm Beach belongs to me, CEDRIC FRASER."
The Department of Highway Safety and Motor Vehicles ("Department") instituted forfeiture proceedings by requesting that the court issue an order of probable cause. Because appellant served the Department with his affidavit, the Department in turn served him with a copy of the complaint. The court held an adversarial preliminary hearing and entered an order of probable cause finding that the Department had established sufficient facts to believe that the money was a "contraband article," as defined by section 932.701(2)(a), Florida Statutes (1993). The court also issued a rule to show cause, which ordered all claimants to serve upon the Department an answer admitting, denying, or explaining the material allegations of the complaint and asserting any affirmative defenses thereto. Fraser, the sole purported claimant, filed an answer and asserted as an affirmative defense that he was "a lawful and innocent owner."
During the discovery phase of the litigation, the Department took Fraser's deposition and inquired as to why he claimed that the $41,500 recovered from the bumper of McNaughton's car was his money. The following colloquy took place during the deposition:
THE WITNESS: What's he say?
MR. LIDA (Fraser's attorney): He wants to know if the $41,000 that was found in the bumper of Murph McNaughton's car was your money.
A: Yes. It was my money.
Q (Department's attorney): How did it get in the bumper of Murph McNaughton's car, Mr. Fraser?
A: It was parked in my garbage (sic), and it was in the bumper unbeknown to me.
MR. LIDA: Can I have two minutes alone outside?
MR. FAHLBUSCH: Okay.
(Whereupon, a brief recess was taken.)
A: I put it there.
Q: Where was the car when you put it there?
A: My garage.
. . . .
Q: Do you remember how long prior to the seizure of the money it was?
A: I put it in thereThe car was parked in there for a while. I never know (sic) [McNaughton] was going to take it out. He take (sic) it out because the key was hanging right there.
Q: How long prior to the seizure did you put it in the car?
MR. LIDA: Listen to his question. He wants to know how long prior to Murph getting stopped you put the money in the car, if you remember.
A: I don't remember.
. . . .
Q: Do you know Murph McNaughton?
A: Yes. He's my stepson.
. . . .
Q: Where did you get the $41,500?
A: It was my money.
Q: Where did you get it?
A: I work for my money.
Fraser claimed that he had packaged the money with rubber bands and duct tape, but he could not recall whether he had wrapped it in fabric softener sheets, conceding that he did not "normally" engage in this practice. During the deposition, Fraser objected through his counsel to the following questions on Fifth Amendment grounds: (1) "What led you to put $41,500 cash in the bumper of the car?"; (2) "Where did you get the $41,500?"; (3) "Why did you put the money in that specific car?"; (4) "What's the name of any person or corporation from whom you got the $41,500.00 or any portion thereof?"; (5) "Does anyone other than yourself know where you got the $41,500?"; and (6) "Other than Elegant Man [Fraser's business] or the purchase and sale of cars that we've talked about, have you had any other source of income within the last two years?"
Fraser moved for summary judgment in the forfeiture proceeding, claiming that the *1024 Department had not met its burden of showing by clear and convincing evidence that the money was being used or had been used in furtherance of a criminal enterprise. After the trial court entered summary judgment in Fraser's favor and the Department appealed, our court reversed, holding that the trial court had impermissibly weighed the evidence in granting summary judgment. See State Dep't of Highway Safety and Motor Vehicles v. Fraser, 673 So.2d 570 (Fla. 4th DCA 1996).
On remand, the case was set for trial, and the parties filed pretrial statements. The issue of Fraser's standing was disputed, and the court requested memoranda and argument. After hearing argument, the trial court entered an order finding:
[t]he Court finds that standing is an issue in the case and that standing is not decided by a jury but is a preliminary issue decided by the Court. Byrom v. Gallagher, 578 So.2d 715 (Fla. 5th DCA 1990), quashed on other grounds, 609 So.2d 24 (Fla.1992). "Unless the standing issue is decided initially, a trial court can never determine who may argue the nexus issue. Thus, the standing issue must be addressed first." Idem. Lacking standing there is no case or controversy to settle. The burden of proof of standing is always on the party seeking the standing. Here the evidence is the affidavit of Cedric Fraser which says "the money belongs to me." That is not sufficient to establish standing. Therefore it is ORDERED AND ADJUDGED that Mr. Cedric Fraser lacks standing to contest the forfeiture of $41,500 in this action.
The trial court subsequently entered a final judgment of forfeiture premised on its prior finding that Fraser, the "only potential claimant" to the currency, had "failed to establish standing to contest the forfeiture concerned herein."[1]
We are governed by the Florida Contraband Forfeiture Act, sections 932.701.705, Florida Statutes (1997), and the decisional law interpreting it. The supreme court has recognized that the forfeiture statutes must be strictly construed and that because forfeiture actions are "harsh exactions" and involve the state's abridgement of a person's property rights, a forfeiture action must satisfy substantive and procedural due process requirements, including providing a person with notice of the seizure and an opportunity to be heard. See Byrom v. Gallagher, 609 So.2d 24, 26 (Fla.1992). However, "[i]nherent in this framework is the threshold requirement that only persons who have standing can participate in a judicial proceeding." Id. The burden of establishing standing in a forfeiture proceeding is on the claimant. See In re Forfeiture of 1983 Wellcraft Scarab, 487 So.2d 306, 309 (Fla. 4th DCA), rev. dismissed, 494 So.2d 1150 (Fla. 1986). Whether an individual has standing determines whether the individual has the opportunity to be heard in the forfeiture proceedings. See Byrom, 609 So.2d at 26-27.
In Byrom, the court considered standing where the seized property, a plane, was subject to title and registration requirements. Noting that if reliance was placed solely on title and registration requirements to confer standing, some persons might attempt fraudulent transfers in order to avoid a forfeiture, the court gave the following guidance to the trial courts on the issue by stating:
[i]n determining whether a person has standing the trial judge should consider: 1) whether that person holds legal title at the time of the forfeiture hearing or has complied with the requirements for receiving title; and 2) whether that person is in fact a bona fide purchaser. The trial judge should consider the facts surrounding the sale to determine whether the transfer is in fact a bona fide purchase. The relationship of the parties, the date the instruments were executed, the value of the property, the sale price, and cancelled checks or bank deposits to show actual payment and receipt of money are all factors which the trial court should *1025 consider in determining whether the transfer is a bona fide purchase. This list is not intended to be exhaustive but rather illustrative of the consideration to be made by the trial judge. In making the determination whether a title holder is also a bona fide purchaser, the trial judge should be able to sift the wheat from the chaff.3
3 We note that this decision is limited to property which the State has required that a person have a title or compliance with title requirements to show ownership. Thus, a party would only have to show that he or she is a bona fide purchaser where the seized property is not subject to the State's title laws.
Byrom, 578 So.2d at 716-17. (italicized emphasis in original) (underlined emphasis supplied.)
We glean from Byrom that in order to have standing to be heard in a forfeiture proceeding, the alleged claimant has the burden of proving bona fide ownership of the seized property. The bona fide nature of the ownership is a factual matter for the trial judge to determine before the person is given the opportunity to be heard at the forfeiture hearing. While Byrom dealt with tangible property, we see no reason why a person claiming ownership of intangible property, such as the currency claimed here, should not also be required to show a bona fide claim to the money. Proof of the bona fide nature of the claim is required to prevent fraudulent statements of ownership, just as proof of bona fide purchaser status in Byrom would prevent fraudulent transfers of titled property in order to defeat forfeiture actions.
We therefore hold that appellant had the burden to prove his bona fide interest in the seized monies in order to have an opportunity to be heard at the forfeiture hearing. Cf. United States v. $280,505 in U.S. Currency, 655 F.Supp. 1487 (S.D.Fla.1986)(mother, whose name appeared on title, and who claimed that she gave her son money to purchase car in which the forfeited currency was found, had no standing to contest forfeiture of vehicle where she could not offer any proof as to how she had obtained the money or the manner in which she could afford to give her son such a substantial sum). Factors to be considered include, but are not limited to, physical possession of the property and sources from which the money or other intangible property may have originated, such as employment, business ventures, loans, gifts and the like. The mere assertion, sworn or otherwise, that "the money is mine" is insufficient to carry this burden.[2]
Nevertheless, because this is a factual determination to be made by the trial judge, the claimant ought to have the opportunity to present his evidence on the issue to convince the court of the bona fide nature of his claim. Indeed, Fraser's proprietary claim to the money was listed as a disputed issue in the pretrial stipulation. In this case, appellant's right to prove the nature of his interest was truncated by the court's determination based upon the affidavit alone that appellant lacked standing. Relying on Byrom, in which the supreme court reversed for a factual determination of the bona fide nature of the claim of ownership, we reverse and remand to afford appellant a hearing before the trial court in which he can present evidence of his claim of ownership. If the facts as presented convince the court that appellant has a bona fide claim of ownership to the money, then appellant should be given the opportunity to be heard on the forfeiture. On the other hand, if the trial court finds that appellant has not carried his burden to prove his claim of ownership, then the trial court may dismiss appellant's claim for lack of standing.
Reversed and remanded.
SHAHOOD, J., and BRYAN, BEN L., Associate Judge, concur.
NOTES
[1] While appellant suggests that the Department waived its right to contest the standing issue, it was raised in the parties' joint pretrial stipulation. Therefore, there was no waiver. Likewise, our prior decision in this case reversing a summary judgment did not conclusively establish any point of law under the law of the case doctrine. See Warren v. Palm Beach County, 528 So.2d 413, 415-16 (Fla. 4th DCA), rev. dismissed, 537 So.2d 570 (Fla.1988).
[2] We distinguish Munoz v. City of Coral Gables, 695 So.2d 1283 (Fla. 3d DCA 1997). While Munoz stated that "[a]t a bare minimum, we conclude that a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceeding," the case involved the standing requirement at an adversarial preliminary hearing, not the actual forfeiture proceeding. See City of Fort Lauderdale v. Baruch, 718 So.2d 843, 846 (Fla. 4th DCA 1998)(discussing Munoz).