825 So.2d 1050 (2002)
Vladimir GONZALEZ, Appellant,
v.
CITY OF HOMESTEAD, Appellee.
No. 3D01-1512.
District Court of Appeal of Florida, Third District.
September 18, 2002.
John H. Lipinski, Hollywood, for appellant.
Andrew B. Ginsburg, for appellee.
Before COPE, FLETCHER and SORONDO, JJ.
COPE, J.
In this forfeiture case, the trial court dismissed the claim of appellant Vladimir Gonzalez for lack of standing. We reverse for procedural reasons and remand for further proceedings.

I.
The City of Homestead filed a forfeiture complaint accompanied by the affidavit of a narcotics detective. The detective stated, in part:

*1051 4) As a part of this ongoing narcotics trafficking and money laundering investigation, the Affiant had received information from a confidential informant [hereinafter referred to as the "CI"] who the Affiant has personally used in the past and who the Affiant knows to be reliable based upon these prior occasions.
5) The CI advised that on January 11, 2001, a Latin male, known only as "Carlos" had contacted the CI about a large amount of U.S. currency that Carlos needed to get into the banking system because the currency was "dirty" from illegal activities. Carlos was subsequently identified to be Carlos Manuel Alonso [hereinafter referred to as "CARLOS"].
6) Based upon the Affiant's knowledge and experience as set forth above, the word "dirty" when referring to a large amount of United States currency, is commonly used by narcotics traffickers and money launderers to mean a large amount of U.S. currency which represents proceeds from illegal narcotics or money transactions, and which has to be legitimized by being exchanged for "clean" money.
7) The CI was further told by CARLOS, that CARLOS regularly had $200,000.00-$300,000.00 in "dirty" money that needed to be "cleaned."
A transaction was arranged for January 12, 2001. Police surveillance units followed Carlos as he left the business premises of World Shipping Management Corp., and subsequently stopped him for a traffic infraction. Inside the vehicle was a cardboard box with $300,000 in cash. The police seized the currency. Carlos disclaimed any ownership interest in the money.
Claimant-appellant Gonzalez submitted a claim for the $300,000. Gonzalez is an officer, director, and sole owner of Worldwide Shipping Management Corp., a Panamanian company with a business location in Miami-Dade County. The company engages in international ocean shipping.
Gonzalez filed the following affidavit, which stated in its entirety:
AFFIDAVIT
1. My name is Vladimir Gonzalez.
2. On January 12, 2001, the City of Homestead Police Department and the Florida Highway Patrol seized from my employee, Carlos Alonso, the sum of $300,000.00 in U.S. Currency.
3. This money belongs to the business I own and operate.
4. This money represents proceeds from and working capital used in the business activities of the business I own and operate.
/S/ ________________
Vladimir Gonzalez
(R. 33). Gonzalez requested an adversary preliminary hearing. See § 932.703(2)(c), Florida Statutes (2001).
At the hearing, the City objected that the affidavit was too conclusory. See Vasquez v. State, 777 So.2d 1200, 1203 (Fla. 3d DCA 2001). The trial court agreed.
Rather than have Gonzalez file a more specific affidavit, the court directed that Gonzalez appear in person to testify before the judge. Gonzalez complied.
Gonzalez testified that the business consists of international shipping by vessels traveling primarily between Miami and Haiti. He stated that the company is customarily paid in cash. He said that the $300,000 was derived from proceeds of the business, plus sale of a ship. He indicated that Carlos had been employed to take the $300,000 to Europe to close on the purchase of a ship.
*1052 The hearing was continued and certain discovery was conducted. Gonzalez was cross-examined. The State did not call any witnesses of its own.
The court indicated that it wished to hear from Carlos. Gonzalez promised to arrange for him to appear at a subsequent hearing, but Carlos never appeared.
The trial court ruled that Gonzalez was not credible, and in particular, the court did not believe the story that the $300,000 was being transported for the purpose of concluding a ship purchase in Europe. The court said. "You don't buy a ship this way. Nobody in his right mind buys a ship this way." (TR. April 26, 2001, at 28). The court's order stated, in part:
THIS CAUSE having come on to be heard before the Court on the following dates: February 12, 2001, March 1, 2001, March 26, 2001, and, April 26, 2001, pursuant to Claimant, Vladimir Gonzalez's request for an Adversarial Preliminary Hearing, and the issue of Vladimir Gonzalez's standing having been raised, and the Court hearing testimony and argument of counsel, having reviewed the record before it, consisting of the Complaint for Forfeiture, and otherwise being advised in the premises, finds as follows:
(1) Claimant, Vladimir Gonzalez has failed to demonstrate the bona fide nature of his claim sufficient to satisfy the Court of his standing as a Claimant.
(2) Claimant, Vladimir Gonzalez's testimony is contrary to reason and common sense; and not worthy of belief as a matter of law.
(3) The documents presented by Claimant, Vladimir Gonzalez, did not make sense and were made up for this case.
Gonzalez has appealed.

II.
The trial and appellate courts have struggled with the question of what procedure to follow when a forfeiting agency raises a challenge to a claimant's standing. Closely related is the question of what issues are to be decided by the court, and what issues must be reserved for the jury. The case law in this area has been gradually evolving.
It is clear in the present case that after taking evidence, the trial court decided not the issue of standing, but the ultimate issue in the case: whether the currency consisted of the proceeds of illegal activity (as the City claimed) or proceeds of legal business activity (as Gonzalez contended).
Under the statute, "[a]ny trial on the ultimate issue of forfeiture shall be decided by a jury, unless such right is waived by the claimant...." § 932.704(3), Fla. Stat. (2001). Thus the ultimate issue in the casewhether the money is proceeds of illegal activityis reserved for the jury.

III.
Under Florida's developing case law of forfeiture, standing is being treated as a preliminary issue for the court. To establish standing, a claimant as a general rule must show ownership, or an ownership interest, in the property which has been seized. See id. § 932.701(2)(h); Vasquez v. State, 777 So.2d 1200, 1202 (Fla. 3d DCA 2001); Munoz v. City of Coral Gables, 695 So.2d 1283, 1288 (Fla. 3d DCA 1997). By case law, the claimant must provide a sworn statement setting forth the factual basis of the claim. Munoz, 695 So.2d at 1288. The oath serves as a cautionary device and, in a case of false statement, a possible predicate for a perjury prosecution.
*1053 The rules must apply even-handedly to both sides. Just as the claimant must submit sworn proof of ownership, so also, to dispute the claim the seizing agency must submit an affidavit setting forth the facts which refute the claim of ownership.
This court has said that where there are conflicting affidavits relating to the ownership of the seized property, "and the affidavits filed in the proceeding cannot be reconciled, we believe that a better procedure is to hold an evidentiary hearing." Vasquez v. State, 777 So.2d 1200, 1202 (Fla. 3d DCA 2001).[1]
A distinction must be drawn between the ownership of personal property (standing), and the question whether the personal property represents the proceeds of illegal activity (the merits of the forfeiture claim). Assume a hypothetical case in which Mr. X is a drug dealer and has $100,000 in proceeds of the drug business. The $100,000 is seized. Mr. X has standing because it is his money. The money is subject to forfeiture, however, because it is the proceeds of illegal activity. See §§ 932.701(2)(a), 932.703(1), (6), 932.704(8), Fla. Stat. (2001).
In this case Gonzalez filed an affidavit of ownership. As the trial court correctly ruled, the affidavit was legally insufficient because it was too conclusory. Where that is the case, the remedy is to order the claimant to submit a more detailed affidavit. See id. The filing of an insufficient affidavit does not call for an evidentiary hearing. However, the deficiency in Gonzalez' affidavit was cured by his testimony setting forth the factual basis for his claim of ownership.
The City's affidavits in the case did not create an evidentiary conflict on the standing issue, and thus no evidentiary hearing was called for. That is so because the City never offered an affidavit controverting Gonzalez' claim of ownership of the $300,000 nor any evidence that the money belonged to a third party. See United States v. $515,060.42 in United States Currency, 152 F.3d 491, 501 (6th Cir.1998) ("[T]he Government does not even suggest any conceivable alternative owners of the currency.") (footnote omitted).
According to the detective's affidavit, the $300,000 came from Worldwide's business premises. Surveillance officers watched Carlos arrive at the building empty-handed and depart thirty-five minutes later with a cardboard box. In the subsequent traffic stop, the cardboard box was found to contain the $300,000.
According to Gonzalez' testimony, the money belonged to Worldwide. He testified that Carlos works for Worldwide and was carrying the box on Gonzalez' instructions. Gonzalez' evidence and the detective's affidavit are consistent (or at least not inconsistent) on the issue of ownership. Consequently, there was no basis for an evidentiary hearing on the question of standing.
*1054 The City argued that Worldwide could not conceivably have generated $300,000 in cash from legal sources, and that it was impossible to believe that the funds were intended for the purchase of a ship in Europe. Those issues pertain to the merits of the forfeiture action, not to the preliminary issue of ownership of the money.
We are aware the trial court found that Gonzalez was not worthy of belief. It could be argued that having found Gonzalez not to be credible, the court was privileged to rule against him on his claim of ownership as well. See City of Coral Gables v. Blount, 116 Fla. 356, 156 So. 244 (1934); Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967); Kline v. Belco, Ltd., 480 So.2d 126 (Fla. 3d DCA 1985); Black's Law Dictionary 620 (7th ed.1999) (falsus in uno doctrine). Such an analysis is not proper here, where (a) there was no triable issue on standing, and (b) the facts actually being adjudicated related to the ultimate issue of forfeiture, a matter reserved for the jury. It is not permissible to conduct a bench trial on the jury issue, draw an adverse credibility inference, and then dismiss the claim for lack of standing.
If it were up to the trial court to decide the ultimate merits of the case, we would agree with the court that the City has much the better side of the argument, and that the claimant's story on the merits is implausible. But the merits cannot be resolved by a bench trial absent a jury waiver.
Where a person's property is the object of a forfeiture action, the owner is entitled to an opportunity to litigate the case on the merits. The inquiry on standing is simply to determine whether the claimant has shown an ownership interest such that he is entitled to be heard in the forfeiture proceeding. Based on the present state of the record, the claim should not have been dismissed for lack of standing.[2]

IV.
We next consider that part of the trial court's order which states, "The documents presented by Claimant, Vladimir Gonzalez, did not make sense and were made up for this case."
A forfeiture case proceeds in accordance with the Florida Rules of Civil Procedure. § 932.704(2), Fla. Stat. (2001). The case law and procedures developed thereunder are fully applicable.
It is settled that if a party submits materially false evidence in a civil proceeding, whether in discovery or at trial, the court has the discretion to strike the offending party's claim or defense as a sanction. See Long v. Swofford, 805 So.2d 882 (Fla. 3d DCA 2001); Leo's Gulf Liquors v. Lakhani, 802 So.2d 337 (Fla. 3d DCA 2001); Rosenthal v. Rodriguez, 750 So.2d 703 (Fla. 3d DCA 2000); Metropolitan Dade County v. Martinsen, 736 So.2d 794 (Fla. 3d DCA 1999); Hanono v. Murphy, 723 So.2d 892 (Fla. 3d DCA 1998); O'Vahey v. Miller, 644 So.2d 550 (Fla. 3d DCA 1994); Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978). The sham pleading rule may also be applicable. See Fla. R. Civ. P. 1.150.
The proceeding below was held on the claimant's request for an adversary preliminary hearing. In such a hearing the issue for consideration is whether there was probable cause for the seizure. § 932.703(2)(c), Fla. Stat. (2001). The City did not file a motion requesting dismissal *1055 of the claim on any theory of fabricated documents.
If the "made up" reference means, as it appears to, that evidence has been fabricated in this case, then this court's disposition of this appeal is without prejudice to the City to raise that issue on remand by appropriate motion.

V.
We acknowledge that the case law in this area has been evolving, and that the procedural road map for forfeiture cases has been less than clear. For the stated reasons, we conclude that the inquiry on standing must be confined to facts relating to the issue of ownership, not the ultimate merits of the case. Accordingly, the order under review is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The procedure outlined in Vasquez is similar to that followed in long-arm cases under Venetian Salami v. Parthenais, 554 So.2d 499 (Fla.1989). The long-arm analogy is a useful one. In a civil case, when a defendant wishes to contest the existence of a factual basis for the exercise of long-arm jurisdiction over him or her, the litigant files a motion to dismiss for lack of personal jurisdiction, and supports the motion with an affidavit stating the facts relevant to personal jurisdiction. 554 So.2d at 502. If the plaintiff wishes to contest the defendant's version of the facts, the plaintiff must file an opposing affidavit. Id. If the two affidavits can be reconciled, the court makes a ruling without an evidentiary hearing. Id. at 502-03. If the two affidavits cannot be reconciled, then the trial court conducts an evidentiary hearing to decide the issue of personal jurisdiction. Id.
[2] As an aside, a trial court ruling at a preliminary hearing that a claimant has standing is an interlocutory ruling and is subject to being revisited if new information comes to light during the case which shows that the property belongs to someone else.