770 So.2d 229 (2000)
Maria PIQUERAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2449.
District Court of Appeal of Florida, Third District.
October 25, 2000.
Zuckerman, Spaeder, Taylor & Evans, and Guy A. Rasco and Beatriz Galbe; and Robert A. Rosenblatt, for appellant.
Katherine Fernandez Rundle, State Attorney, and Israel Reyes, Assistant State Attorney; and Robert S. Glazier, for appellee.
Before GERSTEN, and RAMIREZ, JJ., and NESBITT, Senior Judge.
RAMIREZ, J.
This is an appeal from an order denying Maria Piqueras standing to contest forfeiture as a claimant of the seized currency in this civil forfeiture action. Piqueras filed an affidavit in the forfeiture action stating under oath that she owned the currency, but two weeks earlier, when the currency was seized, she gave a statement to the police that the money belonged to someone else. Piqueras then signed a document, written in both English and Spanish, in which she waived any rights to the seized currency and swore that she was not the owner. We affirm the trial court's finding of no standing.
The facts giving rise to the forfeiture action show that on March 2, 1999, law enforcement officers conducted a surveillance in Southwest Miami in connection with a money laundering/illegal drug investigation. After observing suspicious activities in which Piqueras and several other individuals were involved, Florida Highway Patrol troopers intercepted a car with two occupants, not including Piqueras. When the currency was discovered in the trunk, these two individuals stated that there was $100,000 there and it belonged to them. There was actually $115,320 in the trunk, wrapped in rubber bands, and bundled in denominations. Two different police dogs alerted on the currency, ostensively indicating that the currency had been close to a significant amount of narcotics.
All of the five individuals who were observed in connection with the currency agreed to cooperate and they all drove themselves to the Coral Gables Police station, unaccompanied by any law enforcement officers. All signed Miranda waivers, none were taken into custody, and none were subsequently arrested. Piqueras *230 gave a statement that she had entered the United States from Colombia twenty days prior to the seizure with $140,000.00 and that the currency which was seized belonged to a man in Colombia who gave it to her to do some shopping. She stated that she had entrusted the currency seized to friends on the day of the seizure. Piqueras also signed a standard waiver form, written in English and Spanish, in which she waived all of her rights to the seized currency.
As we stated in Munoz v. City of Coral Gables, 695 So.2d 1283, 1286 (Fla. 3d DCA 1997), "to contest a forfeiture action, a party must first demonstrate an interest in the seized property sufficient to satisfy the court of the party's standing as a claimant." We explained that the burden to establish such standing "rests squarely with the claimant(s) to the seized property." Id. at 1287.
In Arango v. Forfeiture of $477,890, 731 So.2d 847, 848 (Fla. 3d DCA 1999), we reversed a finding that Arango had standing to challenge the civil forfeiture of the currency in that case, relying on Salazar v. Forfeiture of $182,289.00, 728 So.2d 276 (Fla. 3d DCA 1999). Both Salazar and Arango signed sworn, written waivers of any rights to the seized currency, then later claimed ownership of the currency. In Salazar, the subsequent statement simply was "it was my property." In Arango, the statement "was more detailed", but it was nevertheless found to be "insufficient to overcome the legal effect of Arango's relinquishment of rights to the currency." 731 So.2d at 847.
Here, Piqueras first filed a Salazar affidavit, stating that "I own the currency." In her motion for reconsideration, she filed a supplemental affidavit stating, in part, as follows:
4. On or about February 2, 1999, I traveled from Colombia to Miami, Florida with $140,000 in cash. A copy of my stamped passport is attached. When I entered the United States, I declared the $140,000 on a U.S. Customs form. I was not given a receipt regarding this declaration. On March 2, 1999, at the time the $115,000 was seized, I advised law enforcement officers that I previously declared the $140,000 upon entering the United States.
5. I lawfully earned the $140,000 in Colombia. These funds are not the proceeds of any narcotics, money laundering or other illegal activity.
6. While I was in the United States, I spent approximately $25,000 of the $140,000 on goods that were to be sent to Colombia.
7. On or about March 2, 1999, I took the remaining $115,000 of my money and entrusted it to others to hold for me.
8. I had the $115,000 in cash that was seized in my possession continuously from before I left Colombia for Miami in early February 1999, until the day the cash was seized on March 2, 1999.
9. I acknowledge that I signed a 5 page form document on the day of the seizure that was presented to me by law enforcement officers. I was forced to sign this document without an attorney and in a very coercive atmosphere that scared me. I did not even read the form document presented to my [sic] by law enforcement officers. To the extent the form document is inconsistent with anything in this affidavit, then the form document is inaccurate.
As to the currency, this affidavit simply states, "I lawfully earned the $140,000 in Colombia." Piqueras never satisfactorily explained how she was coerced into signing a document that directly contradicted her on the crucial issue, the ownership of the currency. She simply claimed that she "was forced to sign." The undisputed record evidence contradicts the assertion of coercion as she drove herself to the police station and was given Miranda warnings, even though she was not in custody. She then gave an extensive statement to the police. Under these circumstances, the trial court could properly find that Piqueras' *231 subsequent affidavit was insufficient to relieve her of the legal effect of her prior renunciation of any rights to the seized currency. Compare Jean-Louis v. Forfeiture of $203,595.00 in U.S. Currency, 767So.2d 595 (Fla. 4th DCA 2000) (reversing and remanding for an evidentiary hearing on standing where the claimants gave a detailed, sworn statement explaining their ownership and dealings with the seized money, yet moments later signed an "Affidavit and Stipulation" waiving their right to the money and disclaiming ownership. The claimants asserted that they were deceived into signing the paper so they would be allowed to go home.).
In conclusion, the trial court was correct in finding that Piqueras did not establish standing to contest the forfeiture of the currency in this case.
Affirmed.