777 So.2d 1200 (2001)
Javier VASQUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2342.
District Court of Appeal of Florida, Third District.
February 21, 2001.
Zuckerman, Spaeder, Taylor & Evans, and Guy A. Rasco, and Beatriz Galbe, Miami; and Robert A. Rosenblatt, Miami, for appellant.
Katherine Fernandez Rundle, State Attorney, and Israel Reyes, Assistant State Attorney; and Robert S. Glazier, Miami, for appellee.
Before GERSTEN, and RAMIREZ, JJ., and NESBITT, Senior Judge.

*1201 ON MOTION FOR REHEARING

RAMIREZ, J.
Appellee State of Florida's motion for rehearing is granted, the original opinion in this case, filed on December 20, 2000, is vacated, and the following corrected opinion is substituted therefor.
Javier Vasquez appeals a trial court order denying him standing to contest the forfeiture of $226,380.00 in currency. Under the circumstances of this particular case, we reverse the trial court's order and remand for an evidentiary hearing on the issue.
As part of an investigation into money laundering and drug trafficking, law enforcement officers conducting surveillance observed Vasquez drive his vehicle up to a residence owned by a third party. The officers observed Vasquez's passenger exit the vehicle and enter the residence. The passenger was carrying a shopping bag. The officers immediately went to the door of the residence and allegedly obtained consent from the owner of the residence to search his home. Vasquez's passenger was still in the residence when the search was conducted. The officers found the bag that had been carried into the house from Vasquez's vehicle in the laundry room of the residence and seized $70,080.00 in bundled currency from the bag. According to the forfeiture complaint, Vasquez stated that he "had agreed to drop [the currency] off at the [residence]" and that "he was earning two or three percent." The complaint further alleged that Vasquez told the officers that "he had more ... money at his residence." As a result of a search of Vasquez's residence,[1] an additional $156,300.00 in similarly bundled currency was seized from a plastic bag, a cardboard box, and a purse found inside the house. In total, these police operations resulted in the seizure of $226,380.00 in currency.
Vasquez and the other two individuals who were present at the first residence were transported to a police station. Although the other two individuals signed a standard waiver of rights form in which they denied any interest in or rights to the seized currency, Vasquez refused to do so. In response to the petition for forfeiture, Vasquez filed a claim to the money, along with an affidavit, and requested an adversarial preliminary hearing. The affidavit, signed under oath and attested by a notary states:
1. May [sic] name is Javier Vasquez.
2. I own the above-referenced U.S. Currency totaling approximately $226,380 that was seized in Dade County, Florida on November 9, 1998.
3. The seized currency should not be forfeited and should be released immediately to me.
4. My interest in the seized currency is superior to any right of the State.
At the adversarial preliminary hearing, the trial court found probable cause for the forfeiture and that Vasquez had standing to contest it. Four months later, on motion of the state, the trial court ruled that the affidavit filed by Vasquez was not sufficiently detailed as to his allegations of ownership of the seized currency. The trial court set aside its finding that Vasquez had standing and granted Vasquez ten days "to supplement the record in order to demonstrate standing." In response to the order, Vasquez filed an unnotarized supplemental affidavit entitled "Declaration," together with a motion to reinstate standing to contest the forfeiture, or in the alternative, to reinstate his standing to permit him to take discovery and move to suppress evidence. In his supplemental affidavit, Vasquez stated that: (a) he never told the government agents that he did not own the seized currency; (b) he reaffirmed that he owns the seized currency which was taken from his possession; *1202 and (c) he had refused to sign any police form relinquishing his rights to the currency. The declaration contained the following executed but uncompleted attestation, "... I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct that this declaration was executed on April __, 1999 in ______, Colombia."[2] At the same time, Vasquez's wife, Evangelina Salazar, who had allegedly given consent for the search of their residence, also filed an affidavit in which she described in detail the circumstances surrounding the search of her home and the signing of the consent to search form.
Following extensive argument on Vazquez's motion to reinstate standing, the trial court denied his motion. Vasquez's counsel contended that the court's requirement of further detail regarding the source and nature of Vasquez's alleged ownership of the currency was unsupportable under Florida law and violated Vasquez's Fifth Amendment rights under the circumstances of this case.
Under controlling precedent in this district, "a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceeding." Munoz v. City of Coral Gables, 695 So.2d 1283, 1288 (Fla. 3d DCA 1997)(emphasis added). In Salazar v. Forfeiture of $182,289, 728 So.2d 276 (Fla. 3d DCA), rev. denied, 740 So.2d 528 (Fla.1999), the claimant signed a sworn statement relinquishing all rights, title, and interest in the property. We held that the claimant could not thereafter merely state that it was his money in order to establish standing because such a conclusory statement did not overcome the legal effect of his prior relinquishment of rights. The claimant in Arango v. Forfeiture of $477,890, 731 So.2d 847 (Fla. 3d DCA 1999), also signed a sworn, written waiver of rights to the seized currency, then later claimed ownership of the currency. In Arango, this Court observed that the subsequent statement was more detailed than that made in Salazar, but we still held that "it was nevertheless insufficient to overcome the legal effect of Arango's relinquishment of rights to the currency." Id. This Court found Arango's "subsequent claim that he earned the $477,890 by selling cars, automotive parts, and heavy machinery, totally incredible, especially following his statements during the seizure to the police that the money represented the proceeds of a Colombian narcotics operation." Id. at 847-48. Finally, in Piqueras v. State, 770 So.2d 229, 230-31 (Fla. 3d DCA 2000), we affirmed a finding of no standing of a forfeiture claimant who filed an affidavit asserting that she had earned the $140,000 in seized currency in Colombia, but on the day of the seizure she had voluntarily signed a statement to the contrary.
We have never explained what constitutes the "sworn proof" envisioned in Munoz. However, we have recognized that a claimant should not have to prove his or her case to establish standing. See United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1112 (5th Cir.1992) (claimant established standing by merely swearing to the fact that he owned the currency, particularly where the government had admitted the claimant's relationship to the currency in its complaint and the court distinguished cases where the claimants at first deny ownership of the seized currency). The problem with this case, as with many standing cases, is that trial courts generally decide the issue summarily. Where the claimant has not previously executed a voluntary waiver disclaiming any ownership interest in the property and the affidavits filed in the proceeding cannot be reconciled, we believe that a better procedure is to hold an evidentiary hearing.
*1203 This was the same conclusion reached in Fraser v. Department of Highway Safety & Motor Vehicles, 727 So.2d 1021 (Fla. 4th DCA 1999), rev. granted, 760 So.2d 946 (Fla.2000), where the Fourth District attempted to define the claimant's burden of proof on the standing issue as something more than a sworn, unembellished statement of ownership. It held that a claimant has the burden of proving a bona fide interest in the seized currency in order to have an opportunity to be heard at the forfeiture hearing. "The mere assertion, sworn or otherwise, that `the money is mine' is insufficient to carry this burden." Id. at 1025. The court nevertheless concluded that the claimant ought to have the opportunity at an evidentiary hearing "to convince the court of the bona fide nature of his claim." Id.
The statements attributed to Vazquez by the complaint in this case at least imply that he was acting as a money courier for a third party, thus conflicting with his assertion of ownership of the currency. He told the police officers that he was under stress over his father's recent death, that he needed money for a trip to Colombia to visit family members, and had agreed to deliver the money in order to earn two or three percent. However, Vazquez refused to sign a waiver of rights to the currency, and in his subsequent statements, he swore the money belonged to him. Although Vazquez never explained the source of the money or how he had amassed such a large hoard of currency, i.e., he never established "the bona fide nature of his claim," Fraser, 727 So.2d at 1025, these are factual issues that simply cannot be resolved by reviewing the verified complaint and his affidavits. See also Jean-Louis v. Forfeiture of $203,595.00, 767 So.2d 595 (Fla. 4th DCA 2000) (reversing for an evidentiary hearing).
Thus, we conclude that what constitutes "sworn proof" sufficient to confer standing depends on the circumstances of the case. If a claimant voluntarily waives all rights to the seized property, a conclusory affidavit that "I own the money" will be insufficient. See Arango, Salazar, Piqueras. But, if the trial court is confronted with conflicting evidence and no waiver of rights by the claimant, as in this case, only an evidentiary hearing can resolve the standing issue. At the evidentiary hearing, Vazquez should suffer no penalty for invoking his Fifth Amendment privilege. See Spevack v. Klein, 385 U.S. 511, 515, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). But, it must be noted that the trial court may draw an adverse inference against a party in a civil action who invokes his privilege against self-incrimination. See Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); see also Wohlstrom v. Buchanan, 180 Ariz. 389, 884 P.2d 687 (1994)(analyzing the very real conflicts between forfeiture standing requirements such as those imposed by the trial court in this case and Fifth Amendment principles, noting that the claimant not only asserted he owned the currency, but gave the date and place of its acquisition and, as here, the property was taken from him and no one else claimed an interest in it).
Reversed and remanded for an evidentiary hearing on the issue of standing.
NOTES
[1] The issues surrounding the voluntariness of the searches and seizures involved in this case remain unresolved.
[2] We find for purposes of this opinion that this declaration, signed under penalty of perjury, is "sworn" to the same extent as the original notarized affidavit.