888 So.2d 736 (2004)
Wayne CHUCK and John Toney, Appellants,
v.
CITY OF HOMESTEAD POLICE DEPARTMENT and Village of Pinecrest, Appellees.
Nos. 3D02-233, 3D01-2768.
District Court of Appeal of Florida, Third District.
December 15, 2004.
*738 John E. Bergendahl, Miami, and Kenneth P. Speiller, for appellants.
Andrew B. Ginsburg, and Robert S. Glazier, Miami; and Cynthia A. Everett, Opa Locka, for appellees.
Before SCHWARTZ, C.J., and COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, RAMIREZ, WELLS, and SHEPHERD, JJ.

EN BANC
RAMIREZ, J.
We have heard two cases en banc in an attempt to clarify the controversy surrounding the standing issue at the preliminary adversarial hearing stage of a forfeiture of seized currency proceeding. The standing issue has all too often been confused with the merits of the actual case. At these adversarial hearings, the property rights of claimants have been summarily decided by the trial court, depriving them of their statutory and constitutional rights to a trial by jury. We hold that John Toney, who had sworn his unconditional ownership of the subject currency, who had never disavowed such ownership, and for which no other competing claim had been made to the seizing authority, had a sufficient property interest to confer him standing to proceed with his claims at the adversarial preliminary hearing stage of a forfeiture proceeding pursuant to Florida's Contraband Forfeiture Act. We thus remand Toney's case for a trial on the merits. In Wayne Chuck's case, because there *739 was evidence that he contradicted himself as to the ownership of the currency, we reverse and remand for a new hearing on standing.
In case number 01-2768, John Toney appealed the trial court's order determining that he had no standing in the forfeiture of $60,600 in U.S. currency, as well as the denial of his motion to dismiss for failure to hold a timely adversarial preliminary hearing under Florida's Contraband Forfeiture Act. In case number 02-233, Wayne Chuck appealed the trial court's order determining that he had no standing in the forfeiture of $380,015.00 in U.S. currency, as well as the denial of his motion to dismiss for failure to hold a timely adversarial preliminary hearing also under Florida's Contraband Forfeiture Act. The motion for rehearing en banc is hereby granted. We withdraw our prior opinion dated September 30, 2002, and substitute the following opinion in its place. In addition, this opinion also serves as the decision in Toney's case.

I. Facts and Proceedings Below in Case Number 02-233Wayne Chuck v. In re: Forfeiture of $380,015.00

On November 3, 2001, the City of Homestead Police Department (Homestead) received an allegedly reliable tip that a person, subsequently identified as Wayne Chuck, was involved in money laundering and narcotics transactions. A Homestead Narcotics Unit detective established surveillance on Chuck's 2001 Acura Legend. The detective requested that Florida Highway Patrol monitor and execute a traffic stop on the vehicle. The Florida Highway Patrol trooper allegedly observed the driver of the Legend commit an improper lane change, and thus stopped the vehicle.
Following the stop, a second Florida Highway patrolman arrived on the scene. Donovan A. Grant was the driver, and Chuck was the passenger. Grant consented to a search of the vehicle. A canine sniffed the vehicle and alerted to the trunk. When the officers opened the trunk, two canines alerted to a red, white and blue Huggies diaper box. The trooper asked Grant and Chuck what was in the box. Grant responded that he did not know, that it was "his" box, and pointed to Chuck. Chuck responded that it was money. The trooper asked Chuck how much money was in the box, and he replied that it was $380,000.00. Another detective opened the box and found a large amount of U.S. currency. Chuck was then given his Miranda warnings[1] and interrogated about the money. Chuck told the detective that the box was his and that Grant did not know about the money. Chuck further stated that he did construction work and saved the money over the years. He then told the detective that he did not pay income tax, that he lived in Jamaica, that he made the money in the United States, and that he had the money with him because he was taking it home. The detective asked Chuck if he had a money transmitter's license, to which Chuck replied, "No." The detective then asked Chuck if the money was proceeds from something illegal and Chuck responded, "I don't know, maybe." Chuck told the detective he was going to give the money to someone. Chuck shrugged his shoulders and did not reply when asked how much he was going to make for dropping off the money. The currency was packaged in bundles of $20.00, $10.00, and $5.00 bills. Homestead agents seized the currency.
Chuck was arrested for violating section 896.101(3)(B), Florida Statutes (2000), of the Florida Money Laundering Act. On November 8, 2001, a Notice of Seizure Pending Forfeiture was sent to Chuck at *740 the jail where he was being detained. The jail received the Notice on November 9, 2001, but the corrections officers did not deliver it to Chuck until November 15, 2001. On November 27, 2001, Chuck sent a request for an adversarial preliminary hearing pursuant to section 932.703(2)(a), Florida Statutes (2000), claiming the $380,015.00 which was taken from him on November 3, 2001. Chuck spent 21 days in jail before the State dropped the money-laundering charges.
On November 28, 2001, in response to Chuck's request, Homestead filed an "Emergency Request for an Adversarial Preliminary Hearing Pursuant to Florida Contraband Forfeiture Act." Homestead asked the trial court to conduct the hearing no later than December 10, 2001, or as soon as reasonably possible to avoid dismissal. Despite this warning, the trial court scheduled the hearing for December 17, 2001. The complaint for forfeiture was served on December 4, 2001. On December 17, 2001, the parties agreed to continue the hearing to December 19, 2001.
At the hearing on December 19, 2001, Chuck moved to dismiss the forfeiture action for failure to hold the adversarial preliminary hearing within ten days after the request was received or as soon as practicable thereafter, pursuant to section 932.703(2)a), Florida Statutes (2000). Chuck argued that the tenth day following his request was Saturday, December 8, 2001, thus the trial court should have scheduled the hearing on December 10, 2001. The trial court explained that the delay in scheduling was that the court was presiding over a medical malpractice case and denied Chuck's motion to dismiss.[2]
The trial court then addressed the standing issue. Chuck contended that he only had to demonstrate that he was a "person entitled to notice," as the term is defined in section 932.701(a)(9)e(), Florida Statutes. Chuck submitted an affidavit which stated the following:
1) On November 3, 2001, I was a passenger in a vehicle driven by Donavan Grant. For no apparent reason a police officer stopped the vehicle around the intersection of Southwest 117th Avenue and Southwest 88th Street, Miami, Florida. Following the stop of the vehicle, additional police officers arrived and the vehicle was searched. During the course of the search the police found a box in the trunk of the vehicle and asked Mr. Grant what was in the box. Mr. Grant responded, "I don't know" and told the officers that the box belonged to me. I was then asked what was in the box and I told the officers that it was money. When asked how much I told them Three Hundred Eighty-Thousand ($380,000.00). I also told the officers that the money was mine.
2) Following my telling the police that the money in the box belonged to me, I was placed under arrest and taken to jail.
3) On November 13, while in jail, I received a letter notifying me that my money had been seized and that forfeiture proceedings were going to be initiated. When I received the letter I immediately made a written notation on the envelope the letter came in showing the date I received it. A copy of the envelope is attached as Exhibit "A".

*741 4) On or about November 26, 2001, I was released from jail when the State of Florida decided not to file charges against me regarding what had happened back on November 3, 2001.
5) At all times material I am and have been the owner of the Three Hundred Eight-Thousand Dollars ($380,000.00) in United States currency which was discovered during the search of Mr. Grant's vehicle on November 3, 2001, and which has subsequently been seized and is now subject to these forfeiture proceedings. In addition on November 3, 2001, I was in possession of this currency.
Homestead advised the court that the burden was on Chuck to establish standing and to show "the bona fide nature of the claim." The trial court announced that the affidavit was insufficient and asked if Chuck was going to testify. Chuck did not testify, and Homestead relied on its own complaint and affidavit.
The trial court found that Chuck failed to establish standing by virtue of his failure to provide sufficient sworn proof of a possessory and/or ownership interest in the subject property and denied Chuck's motion to dismiss for failure to conduct a timely adversarial hearing. The court found that Chuck failed to explain the source of the currency or how he amassed such a large sum of currency, citing to Vasquez v. State, 777 So.2d 1200, 1203 (Fla. 3d DCA 2001). The court further found that Chuck failed to meet the burden of establishing the "bona fide nature of his claim", citing again to Vasquez and Fraser v. Dep't of Highway Safety and Motor Vehicles, 727 So.2d 1021, 1025 (Fla. 4th DCA 1999). Chuck appealed to this Court the trial court's order.
This Court reversed the trial court's order and remanded the case for entry of an order dismissing the forfeiture proceeding. In reaching our decision, we did not address the specific issue of standing. We reversed because Chuck was not given a preliminary hearing within the ten day-period provided in section 932.703, Florida Statutes (2000). Homestead then moved for rehearing en banc, contending that the opinion ordered the dismissal of the forfeiture proceeding, even though the trial court had held that Chuck lacked standing to challenge the forfeiture proceeding. Homestead argued that the opinion was contrary to the law stated in Munoz v. City of Coral Gables, 695 So.2d 1283, 1288 (Fla. 3d DCA 1997), Arango v. In re Forfeiture of $477,890.00 in U.S. Currency, 731 So.2d 847 (Fla. 3d DCA 1999), and Gonzalez v. City of Homestead, 825 So.2d 1050 (Fla. 3d DCA 2002). We granted rehearing en banc.

II. Facts and Proceedings Below in Case Number 01-2768John Toney v. Village of Pinecrest

On May 31, 2001, a Village of Pinecrest police officer stopped a 1994 Nissan Maxima for not having a visible tag. The driver of the car was Omar Jackson, and the passenger was Lakeisha Thomas. When Jackson opened the trunk to search for his identification, he opened a lock box and the officers viewed some cash underneath. The officer arrested Jackson for a violation of a driver's license restriction. The officer searched the vehicle incident to the arrest and found a gun in the glove compartment. In the lock box, they found jewelry and $60,660.00 in U.S. currency (590 $100 bills and 33 $50 dollar bills).
Pinecrest sent notices of seizure to Jackson and Thomas. Thomas requested an adversarial preliminary hearing by certified mail, received by Pinecrest on June 18, 2001. John Toney requested a preliminary hearing on or about June 22, 2001, which Pinecrest received on June 25, 2001. Pinecrest filed a Verified Complaint of *742 Forfeiture on June 26, 2001 and a Motion for Emergency Adversary Preliminary Hearing on June 28, 2001. The trial judge in that division was on vacation, so the case was transferred to an alternate judge, who scheduled a hearing for July 12, 2001. When the parties appeared for the adversarial preliminary hearing on July 12, 2001, the alternate judge only had a status conference scheduled, and Pinecrest subsequently filed a second emergency motion for adversarial preliminary hearing. The adversarial preliminary hearing was finally held on July 24, 2001, as were Thomas' and Toney's motions to dismiss. At the hearing, Thomas and Toney filed affidavits. Toney's sworn affidavit stated the following:
1. My name is JOHN TONEY.
2. I own the above-referenced U.S. Currency totaling approximately $60,600.00 that was seized from the Village of Pinecrest Police Department.
3. The seized currency should not be forfeited and should be released immediately to me.
4. My interest in the seized currency is superior to any right of the State of Florida.
The trial court ruled that the affidavits were insufficient, so it took Thomas' and Toney's testimony. Thomas testified that she owned the car and some of the jewelry found in the lock box. She did not mention the currency or that Toney was the owner of the money.
Toney testified that he bought and sold real estate and that he used cash in these transactions. He also bought and sold cars and used cash in these transactions, especially in car auctions because cash was required to purchase the cars at the auctions. He told the trial court that he sold two houses and received $150,000.00 from the deal. He kept twenty-thousand dollars in cash at his home, and the rest he kept at his bank. Over a period of six years, he accumulated another $40,600. Toney testified that he had given his nephew, Omar Jackson, $60,000 and change to buy a couple of duplexes as part of his real estate business. He gave Jackson the money approximately three weeks before the subject seizure. He also testified that the currency was in denominations of twenties, hundreds and tens.
Pinecrest asked Toney if he had the records of those he talked to about purchasing the duplexes. Toney's attorney objected, stating that because standing was the only issue before the trial court, Pinecrest was not allowed to delve into the ownership of the money issue, which he claimed should be reserved for trial. The court allowed the questioning. Toney testified that he could not remember the addresses of any of the houses that he had looked at except for one in North Miami on Sixth Avenue, nor could he remember the names of owners of any of the properties he had looked at, but he did have records. Toney further testified that it was his money because his nephew did not have his own money. He was not on the scene when the police officer stopped the car, and he did not know how the money got into the lock box. The Pinecrest arresting officer testified, after the trial court had already ruled on the standing issue, that the seized currency was in denominations of $100.00 and $50.00 bills and one $10.00 bill.
The trial court found that Thomas had standing and that Toney had no standing. Thus, Toney had no right to an adversarial preliminary hearing and no right to contest any forfeiture proceeding, as he did not present sworn proof of a possessory and/or ownership interest in the $60,000 in U.S. currency. The court did not find Toney's explanation credible and cited to *743 Vasquez v. State, 777 So.2d 1200 (Fla. 3d DCA 2001), Piqueras v. State, 770 So.2d 229, 230 (Fla. 3d DCA 2000), and Munoz v. City of Coral Gables, 695 So.2d 1283 (Fla. 3d DCA 1997). The trial court further found that there was probable cause for Pinecrest's seizure of the $60,600, pursuant to section 932.703, Florida Statutes (2000). The trial court denied Toney's motion to dismiss and stated that "it's a close call in this case," with regard to the court's failure to hold the adversarial preliminary hearing within ten days of Tony's request. Toney appealed the final order of no standing. The case was set for hearing en banc, along with the rehearing on banc of Chuck's case.

III. Discussion

A. Constitutionality of Forfeiture Statutes
It is firmly established that claimants have a constitutional right to a jury trial under Article I, Section 22 of the Florida Constitution, in civil forfeiture proceedings instituted under Florida's Contraband Forfeiture Act, sections 932.701-.704, Florida Statutes. See In re Forfeiture of 1978 Chevrolet Van VIN: CGD1584167858, 493 So.2d 433 (Fla.1986). Article I, Section 9 of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Under the Florida Constitution, substantive due process protects the full range of individual rights from unwarranted encroachment by the government. As the Florida Supreme Court stated in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991):
Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government. To ascertain whether the encroachment can be justified, courts have considered the propriety of the state's purpose; the nature of the party being subjected to state action; the substance of that individual's right being infringed upon; the nexus between the means chosen by the state and the goal it intended to achieve; whether less restrictive alternatives were available; and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights. Substantive due process may implicate, among other things, the definition of an offense, see State v. Bussey, 463 So.2d 1141 (Fla.1985); Baker v. State, 377 So.2d 17 (Fla.1979); the burden and standard of proof of elements and defenses, see, e.g., State v. Cohen, 568 So.2d 49, 51 (Fla.1990); the presumption of innocence, see State v. Rodriguez, 575 So.2d 1262 (Fla.1991); State v. Harris, 356 So.2d 315, 317 (1978); vagueness, see, e.g., Perkins v. State, 576 So.2d 1310 (Fla.1991); Bussey; State v. Barquet, 262 So.2d 431, 436 (Fla.1972); the conduct of law enforcement officials, see Haliburton v. State, 514 So.2d 1088 (Fla.1987); State v. Glosson, 462 So.2d 1082 (Fla.1985); the right to a fair trial, see Kritzman v. State, 520 So.2d 568 (Fla.1988); and the availability or harshness of remedies, see In re Forfeiture of 1976 Kenworth Tractor Trailer Truck, 576 So.2d 261 (Fla.1990); Roush v. State, 413 So.2d 15 (Fla.1982).
Id. at 960 (footnotes omitted).
Where substantive rights are at issue, procedural due process ensures fair treatment through the proper administration of justice. Under the Florida Constitution, procedural due process guarantees that a defendant shall be given fair notice and an opportunity to be heard and defend before judgment is rendered against him. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (procedural due process under the Fourteenth Amendment of the United States Constitution *744 guarantees notice and an opportunity to be heard at a meaningful time and in a meaningful manner).
In 1980, Florida enacted the Florida Contraband Forfeiture Act ("the Act"). The Florida Supreme Court upheld the constitutionality of the Act, holding that the act was facially constitutional provided that it was applied consistent with the minimal due process requirements of the Florida Constitution. See Dep't of Law Enforcement, 588 So.2d at 959. The Florida Supreme Court held the act was constitutional by its interpretation that the act included substantive and procedural safeguards that were not in the wording of the act. The Florida Legislature adopted most of the requirements of Department of Law Enforcement when it enacted Florida Session Laws chapter 92-54 (codified at Fla. Stat. §§ 932.701-932.707 (Supp.1992)). The Florida Supreme Court also stated in Department of Law Enforcement that it was well settled that the ultimate issue of forfeiture must be decided by jury trial unless the claimants waive that right, citing to Article I, section 22 of Florida's Constitution and In Re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla.1986). See Dep't of Law Enforcement, 588 So.2d at 967. The Florida Supreme Court stated that this substantive right was subsumed within Article I, section 9 of the Florida Constitution. Id.
Furthermore, section 932.704(1) of the Florida Contraband Forfeiture Act provides in pertinent part,
"It is also the policy of this State that law enforcement agencies ensure that, in all seizures made under the Florida Contraband Forfeiture Act, the officers adhere to federal and state constitutional limitations regarding an individual's right to be free from searches and seizures, including, but not limited to the illegal use of stops based on a pretext, coercive-consent searches, or a search based solely upon an individual's race or ethnicity."[3]
Florida has long recognized that forfeiture actions are harsh actions not favored in either law or equity. Thus, forfeiture statutes must be strictly construed. See Byrom v. Gallagher, 609 So.2d 24 (Fla.1992); Dep't of Law Enforcement, 588 So.2d at 961 ("In construing the [Florida Contraband Forfeiture] Act, we note that forfeitures are considered harsh exactions, and as a general rule they are not favored either in law or equity."); Town of Oakland v. Mercer, 851 So.2d 266, 269 (Fla. 5th DCA 2003) ("Due process mandates that the provisions of the forfeiture act be strictly interpreted in favor of the persons being deprived of their property."); State Dep't. of Highway Safety and Motor Vehicles v. Metiver, 684 So.2d 204 (Fla. 4th DCA 1996). Thus, in uncertain cases, strict construction means that the courts will construe ambiguous statutes, or even clear forfeiture provisions resting on uncertain authority, against any loss and in favor of an owner's retention of property. See Williams v. Christian, 335 So.2d 358, 361 (Fla. 1st DCA 1976) ("Statutes imposing forfeiture will be strictly construed in a manner such as to avoid the forfeiture and will be liberally construed so as to avoid and relieve from forfeiture.").
The Florida Supreme Court has stated that a forfeiture action must satisfy substantive and procedural due process requirements, including providing a person with notice of the seizure and an opportunity to be heard. See Byrom, 609 So.2d at 26. In Department of Law Enforcement, the Florida Supreme Court outlined the *745 principles to be applied in order to find the Florida Contraband Forfeiture Act constitutional from a due process standpoint, including the right to a trial by jury. See Dep't of Law Enforcement, 588 So.2d at 966-67. See also In re Forfeiture of One 1978 Chevrolet Van VIN CGD XXXXXXXXXX, 493 So.2d 433 (Fla.1986).

B. Florida Standing Requirements
Florida has recognized in its decisions that only persons who have standing can participate in a judicial proceeding. Byrom v. Gallagher, 609 So.2d 24, 26 (Fla.1992). The burden of establishing standing in a forfeiture proceeding is on the claimant. See In re Forfeiture of 1983 Wellcraft Scarab, 487 So.2d 306, 309 (Fla. 4th DCA), rev. dismissed, 494 So.2d 1150 (Fla.1986). Furthermore, standing is a preliminary issue that is to be decided by the court. Fraser v. Dep't of Hwy. Safety and Motor Vehicles, 727 So.2d 1021, 1022 (Fla. 4th DCA 1999).
Under Florida's Contraband Forfeiture Act, a person with standing has the right to litigate the issue of probable cause at an adversarial preliminary hearing. See City of Ft. Lauderdale v. Baruch, 718 So.2d 843, 846 (Fla. 4th DCA 1998). Specifically, only a person entitled to notice under section 932.703(2)(a), Florida Statutes, is entitled to an adversarial preliminary hearing. See City of Ft. Lauderdale v. Baruch, 718 So.2d 843, 846 (Fla. 4th DCA 1998). According to section 932.701(2)(e), a "person entitled to notice" is any owner, entity, bona fide lienholder, or person in possession of the property subject to forfeiture when seized, who is known to the seizing agency after a diligent search and inquiry.
To obtain an adversarial preliminary hearing, the clear language of the Act requires a "person entitled to notice" to do one thing: within 15 days after receipt of the statutorily mandated notice informing him of the seizure and his right to an adversarial preliminary hearing, he must request that such a hearing be held. See § 932.703(2)(a)(9)(e), Fla. Stat. Once that request is made, the burden is on the seizing agency and the court to ensure that the statutorily mandated time period for conducting the hearing is complied with.
Florida courts, including ours, have struggled for quite some time with this standing issue. For example, in Munoz v. City of Coral Gables, 695 So.2d 1283, 1286 (Fla. 3d DCA 1997), the claimant made a claim to seized currency by filing the following unverified, unsworn general claim: "COMES NOW ALONSO MUNOZ, who, through his undersigned attorney, hereby makes claim to the Eighty-Five Thousand Eight Hundred Three Dollars ($85,803.00) in United States currency seized by the Coral Gables and Metro Dade Police Departments on August 22, 1996." Munoz did not personally appear at the adversarial preliminary hearing nor did he submit an affidavit or other sworn proof indicating that he was the owner of the currency or in possession of it at the time it was seized from him. The trial court ruled that Munoz failed to establish standing because he did not personally attend the hearing and because the allegations in the verified complaint were sufficient to establish probable cause for the seizure of the currency. Id. at 1286.
In reviewing the trial court's ruling, we agreed with Munoz that his personal appearance at the hearing was not mandatory to establish standing to contest the action. However, we further concluded that neither his unsworn claim nor his unsworn statements to the seizing officer were sufficient to confer standing. We stated that "at a bare minimum, a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the currency to acquire *746 standing to contest the forfeiture proceeding." Id. at 1288.
We then addressed the standing issue again four years later in Vasquez v. State, 777 So.2d 1200 (Fla. 3d DCA 2001). In Vasquez, law enforcement officers conducting surveillance observed Vasquez drive his vehicle up to a residence owned by a third party. The officers observed Vasquez's passenger, carrying a shopping bag, exit the vehicle and enter the residence. The officers went to the door of the residence and allegedly obtained consent from the owner of the residence to search his home. Vasquez's passenger was in the residence when the officers conducted the search. They found the bag that the passenger had carried into the house in the laundry room of the residence. They seized $70,080.00 in bundled currency from this bag. Vasquez stated that he had agreed to drop off the currency at the residence and that he was earning two or three percent. Id. at 1201. A search of Vasquez's own residence uncovered an additional $156,300.00.
At the police station, the other two individuals signed a standard waiver of rights form, denying any interest in or rights to the seized currency. Vasquez refused to sign the waiver. In response to the petition for forfeiture, Vasquez filed a claim to the money, along with an affidavit, and requested an adversarial preliminary hearing. Vasquez's sworn affidavit stated:
1. May [sic] name is Javier Vasquez.
2. I own the above-referenced U.S. Currency totaling approximately $226,380 that was seized in Dade County, Florida on November 9, 1998.
3. The seized currency should not be forfeited and should be released immediately to me.
4. My interest in the seized currency is superior to any right of the State.
Id. at 1201. At the adversarial preliminary hearing, the trial court found probable cause for the forfeiture and ruled that Vasquez had standing to contest it. Four months later, on motion of the state, the trial court ruled that the affidavit filed by Vasquez was not sufficiently detailed regarding his allegations of ownership of the seized currency. The trial court set aside its finding that Vasquez had standing and granted Vasquez ten days "to supplement the record in order to demonstrate standing."
In response to the order, Vasquez filed an un-notarized supplemental affidavit entitled "Declaration," together with a motion to reinstate standing to contest the forfeiture, or in the alternative, to reinstate his standing to permit him to take discovery and move to suppress evidence. In his supplemental affidavit, Vasquez stated that he never told the government agents that he did not own the seized currency. He reaffirmed that he owned the seized currency which was taken from him and that he had refused to sign any form relinquishing his rights to the currency. Vasquez further stated in the supplemental affidavit, "... I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct that this declaration was executed on April __, 1999 in ______, Colombia." Vasquez did not complete this attestation. The trial court denied his motion, and Vasquez appealed to this Court.
We then stated that under controlling precedent, "a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceedings." Vasquez, 777 So.2d at 1202, citing to Munoz, 695 So.2d at 1288 (Fla. 3d DCA 1997). We explained that when a claimant has previously signed a sworn statement relinquishing all rights, *747 title, and interest in the property, that claimant cannot then merely state that it was his money in order to establish standing "because such a conclusory statement did not overcome the legal effect of his prior relinquishment of rights." Id. We again stressed the principle that a claimant should not have to prove his or her case to establish standing, citing to United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1112 (5th Cir.1992) (claimant established standing by merely swearing to the fact that he owned the currency, particularly where the government had admitted the claimant's relationship to the currency in its complaint; the court distinguished cases where claimants at first deny ownership of the seized currency).
We further noted in Vasquez that what constitutes "sworn proof" sufficient to confer standing depends on the circumstances of the case. Id. at 1203. For example, if a claimant voluntarily waives all rights to the seized property, a conclusory affidavit that "I own the money" will be insufficient. See Piqueras v. State, 770 So.2d at 230 (Fla. 3d DCA 2000); Arango v. In re Forfeiture of $477,890.00 in U.S. Currency, 731 So.2d 847 (Fla. 3d DCA 1999), Salazar v. Forfeiture of $182,289, 728 So.2d 276, 277 (Fla. 3d DCA 1999). However, if the trial court is presented with conflicting evidence and no waiver of rights by the claimant, we noted that the better procedure was to hold an evidentiary hearing. Id. at 1202. We thus remanded the case to the trial court for an evidentiary hearing on the standing issue.
Next, we addressed standing in Gonzalez v. City of Homestead, 825 So.2d 1050 (Fla. 3d DCA 2002). In Gonzalez, the City of Homestead filed a forfeiture complaint. The claimant, Gonzalez, was not in the vehicle at the time the $300,000.00 in U.S. currency found in a cardboard box was seized from the subject vehicle from an individual named "Carlos" following a traffic stop. Carlos denied any ownership interest in the currency. Afterwards, Gonzalez submitted a claim for the $300,000.00. Gonzalez filed a sworn affidavit claiming the money was his and requested an adversarial preliminary hearing. In his affidavit, Gonzalez stated that the money had been seized from his employee, that the money belonged to a business that he owned and operated and represented the proceeds from working capital used in the business' activities.
At the adversarial preliminary hearing, the City argued that the affidavit was too conclusory, the trial court agreed and ordered Gonzalez to appear before the trial court to testify, which Gonzalez did. Gonzalez testified regarding the operations of his business and the origins of the currency. He was cross-examined by the City. At the hearing, the City did not call any witnesses. The court stated that it wanted Carlos to testify, Gonzalez said he would arrange for him to appear at the next hearing, but Carlos did not appear at any subsequent hearing.
The trial court did not believe Gonzalez's story that the $300,000 was being transported to purchase a ship in Europe. The court stated, "You don't buy a ship this way. Nobody in his right mind buys a ship this way." Id. at 1052. The trial entered an order finding that Gonzalez had no standing because he had failed to demonstrate the bona fide nature of his claim, and Gonzalez appealed.
In reversing the trial court's order, Judge Cope, writing for this Court, stated:
It is clear in the present case that after taking evidence, the trial court decided not the issue of standing, but the ultimate issue in the case: whether the currency consisted of the proceeds of illegal activity (as the City claimed) or *748 proceeds of legal business activity (as Gonzalez contended).
Under the statute, "[a]ny trial on the ultimate issue of forfeiture shall be decided by a jury, unless such right is waived by the claimant...." § 932.704(3), Fla. Stat. (2001). Thus the ultimate issue in the case  whether the money is proceeds of illegal activity  is reserved for the jury.
The Court noted that "under Florida's developing case law of forfeiture to establish standing, a claimant, as a general rule must show ownership or an ownership interest, in the property which has been seized" Id. at 1052, citing to Vasquez and Munoz. Judge Cope stated that just as the claimant must submit sworn proof of ownership, "so also, to dispute the claim the seizing agency must submit an affidavit setting forth the facts which refute the claim of ownership." Id. at 1053. Judge Cope wrote,
A distinction must be drawn between the ownership of personal property (standing), and the question whether the personal property represents the proceeds of illegal activity (the merits of the forfeiture claim).
...
In this case Gonzalez filed an affidavit of ownership. As the trial court correctly ruled, the affidavit was legally insufficient because it was too conclusory. Where that is the case, the remedy is to order the claimant to submit a more detailed affidavit. See Id. The filing of an insufficient affidavit does not call for an evidentiary hearing. However, the deficiency in Gonzalez' affidavit was cured by his testimony setting forth the factual basis for his claim of ownership.
The City's affidavits in the case did not create an evidentiary conflict on the standing issue, and thus no evidentiary hearing was called for. That is so because the City never offered an affidavit controverting Gonzalez' claim of ownership of the $300,000 nor any evidence that the money belonged to a third party. See United States v. $515,060.42 in United States Currency, 152 F.3d 491, 501 (6th Cir.1998) ("[T]he Government does not even suggest any conceivable alternative owners of the currency.") (footnote omitted).
...
The City argued that Worldwide could not conceivably have generated $300,000 in cash from legal sources, and that it was impossible to believe that the funds were intended for the purchase of a ship in Europe. Those issues pertain to the merits of the forfeiture action, not to the preliminary issue of ownership of the money.
We are aware the trial court found that Gonzalez was not worthy of belief. It could be argued that having found Gonzalez not to be credible, the court was privileged to rule against him on his claim of ownership as well. See City of Coral Gables v. Blount, 116 Fla. 356, 156 So. 244 (1934); Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967); Kline v. Belco, Ltd., 480 So.2d 126 (Fla. 3d DCA 1985); Black's Law Dictionary 620 (7th ed.1999) (falsus in uno doctrine). Such an analysis is not proper here, where (a) there was no triable issue on standing, and (b) the facts actually being adjudicated related to the ultimate issue of forfeiture, a matter reserved for the jury. It is not permissible to conduct a bench trial on the jury issue, draw an adverse credibility inference, and then dismiss the claim for lack of standing.
If it were up to the trial court to decide the ultimate merits of the case, we would agree with the court that the City has much the better side of the argument, and that the claimant's story *749 on the merits is implausible. But the merits cannot be resolved by a bench trial absent a jury waiver.
Where a person's property is the object of a forfeiture action, the owner is entitled to an opportunity to litigate the case on the merits. The inquiry on standing is simply to determine whether the claimant has shown an ownership interest such that he is entitled to be heard in the forfeiture proceeding. Based on the present state of the record, the claim should not have been dismissed for lack of standing. (footnote omitted).
...
We acknowledge that the case law in this area has been evolving, and that the procedural road map for forfeiture cases has been less than clear. For the stated reasons, we conclude that the inquiry on standing must be confined to facts relating to the issue of ownership, not the ultimate merits of the case....
Id. at 1054. We quote extensively from Gonzalez because what occurred in that case is very similar to what occurred in the two cases before us. Consequently, Judge Cope's analysis is especially relevant here.
Other district courts in Florida have also wrestled with the standing issue. For example, in City of Ft. Lauderdale v. Baruch, 718 So.2d 843 (Fla. 4th DCA 1998), the Fourth District Court of Appeal held that the claimant's bare assertion of an "interest" in the property seized from a safety deposit box was insufficient to bring the claimant within the statutory definition of a "person entitled to notice" under Florida's Contraband Forfeiture Act. As a result, the court denied standing to the claimant to litigate the issue of probable cause at the adversarial preliminary hearing. Id. at 847. The court concluded that the showing of standing required of a person entitled to notice is less stringent than that required of a claimant at a forfeiture hearing. The court held that a person entitled to notice need not demonstrate a proprietary interest in the property at issue, but only that he was in possession of the property when it was seized. Id. at 846.
We note that our opinion in Munoz was criticized in Baruch, where the Fourth District stated,
In Munoz v. City of Coral Gables, 695 So.2d 1283 (Fla. 3d DCA 1997), the third district held that at an adversarial preliminary hearing under the forfeiture statute, the party opposing seizure must establish some possessory or ownership interest in the property in order to establish standing to contest probable cause. While we agree with Munoz that there is a requirement to demonstrate standing at a preliminary hearing, we disagree with its reasoning. Munoz appears to confuse the standing requirement of a final forfeiture hearing with that of an adversarial preliminary hearing to establish probable cause. The case cites to authorities addressing the standing requirement at forfeiture hearings. Id. at 1286-87. The case discusses the standing requirement of a "claimant," the statutory term applicable to a contestant in a forfeiture proceeding. Id. The case involved an adversarial preliminary hearing in which Munoz challenged a seizure of $85,803 from his residence, including $55,000 in cash from a shoe box in his bedroom closet. The third district held that Munoz had not demonstrated standing at the preliminary hearing, finding that his "mere possession of the currency" was not "legally determinative of his possessory and/or ownership interest" in the money. Id. at 1287-88. Munoz did not cite to section 932.701(2)(e), the statutory definition of a "person entitled to notice;" it *750 appears that Munoz fell within that definition as a person "in possession of the property ... when seized" so that he did have standing to challenge probable cause at a preliminary hearing.
We acknowledge that Munoz used "forfeiture hearing" and "adversarial preliminary hearing" interchangeably and did not note the statutory distinction between a "claimant" and "person entitled to notice."[4] However, we adhere to our opinion in Munoz because we believe it is still good law. Both Munoz and Baruch found the claimants had no standing because the courts agreed that more than a bare assertion was needed to establish standing. The claimant in Baruch testified that she had "an interest" in the contents of one of the boxes that was seized. She provided no information regarding how she obtained an interest in the money and never contended that she was the owner of or in possession of the seized currency at the time it was seized.
In contrast, both Chuck and Toney filed affidavits swearing that they were the owners of the seized currency. Chuck's affidavit stated that he was in possession of the currency at the time it was seized. Chuck told the detective at the time of the seizure that the money was his and that he saved the money over the years from construction work. In Toney's case, he testified regarding his real estate and car buying/selling businesses and that he used cash to conduct these businesses. He then explained how he had accumulated the sum of money he kept in his house and how he had given his nephew approximately $60,000 three weeks before the subject seizure as part of a real estate transaction.
After Baruch was decided, the Fourth District Court of Appeal held in Fraser v. Dep't of Highway Safety and Motor Vehicles, 727 So.2d 1021 (Fla. 4th DCA 1999), that a claimant had to prove a "bona fide interest" in the seized currency in order to establish standing. The court stated that the "mere assertion, sworn or otherwise, that `the money is mine' is insufficient" to carry the burden of proving a bona fide interest in the property.[5] However, in footnote 2 of Fraser, the court distinguished Munoz by stating,
While Munoz stated that a "[a]t a bare minimum, we conclude that a claimant to *751 seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceeding," the case involved the standing requirement at an adversarial preliminary hearing, not the actual forfeiture proceeding. See City of Fort Lauderdale v. Baruch, 718 So.2d 843, 846 (Fla. 4th DCA 1998) (discussing Munoz).
Thus, the facts of Fraser concerned standing at the actual forfeiture hearing, not at the adversarial preliminary hearing stage, as is the issue here.
In light of the foregoing analysis, we find that Toney established standing at the adversarial preliminary hearing stage of a forfeiture proceeding sufficient to be able to contest probable cause for the seizure. Toney provided a sworn affidavit that he was the owner of the seized currency, and he never disavowed ownership of the currency, as is the case in other Florida decisions such as Velez v. Miami-Dade County Police Dep't., 881 So.2d 1190 (Fla. 3d DCA 2004); Piqueras v. State, 770 So.2d 229 (Fla. 3d DCA 2000); Arango v. Forfeiture of $477,890, 731 So.2d 847 (Fla. 3d DCA 1999); and Salazar v. Forfeiture of $182,289, 728 So.2d 276 (Fla. 3d DCA 1999). Pinecrest never offered any evidence to contradict Toney's claim that he owned the funds in question. Here, there were no inconsistencies or incriminating statements on the ownership issue. The only discrepancy was that Toney testified the currency consisted of hundreds, twenties, and tens, when in actuality the seized currency was mostly hundreds with some fifties and one ten. That is not a material enough discrepancy to decide the issue of standing.
Although the trial court concluded that Toney's testimony was not credible because cash is not an accepted method of conducting real estate transactions, there was nothing in the evidence indicating that someone else owned the money. The narrow inquiry for standing purposes is whether the money belonged to Toney or to someone else, and the evidence in this case does not support the conclusion that someone other than Toney is the owner.
Thus, the trial court in Toney's case erred in not finding that he had standing to appear at the preliminary adversarial hearing to contest probable cause for the forfeiture of the seized currency in question. Because we conclude that Toney has established standing, we reverse and remand in his case with directions to proceed to a trial on the merits.
In Chuck's case, however, there was evidence to contradict his claim of ownership when he told the detective that he was to give the money to someone. Then when he was asked how much he was going to make for dropping off the money, Chuck reportedly shrugged his shoulders. The court took no testimony but simply entertained argument of counsel based on the competing affidavits. Consequently, we find contradictory evidence sufficient to require an evidentiary hearing on the issue of standing. See Gonzalez v. City of Homestead, 825 So.2d 1050, 1053 & n. 1 (Fla. 3d DCA 2002). We believe the appropriate procedure to follow at the evidentiary hearing is similar to the one outlined in Venetian Salami v. Parthenais, 554 So.2d 499 (Fla.1989), for long-arm jurisdiction disputes. See Gonzalez, 825 So.2d at 1053 n. 1.[6]
*752 The issue for resolution at the evidentiary hearing is whether Chuck is the owner of the $380,000 as he claims, or someone else, as Homestead claims. As Chuck has the burden of proof, he should present his case first, after which Homestead may present its case. Rebuttal witnesses may be allowed. If Chuck declines to testify on the basis of the privilege against self-incrimination, the court may draw an adverse inference against him. See Vasquez, 777 So.2d at 1203. After all the evidence is presented, the court decides whether Chuck has established by a preponderance of the evidence that he is the owner of the $380,000 as he claims. If so, the court should proceed to the question of whether there is probable cause for the seizure. If not, Chuck's claim should be dismissed. Accordingly, we reverse the trial court's order in Chuck's case and remand for a new hearing on standing under the procedure outlined here.

C. Federal Standing Requirements
With regard to the standing requirement in federal cases, the First Circuit in United States v. One-Sixth Share of James J. Bulger In All Present And Future Mass Millions Lottery Ticket No. M246233, 326 F.3d 36 (1st Cir.2003), stated that, "It is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." Id. at 41 (citation omitted). Federal cases acknowledge that courts should not, however, confuse the constitutional standing inquiry with the merits determination that comes later. See, e.g., United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1023-24 (7th Cir.2000) (criticizing tests of straw ownership that deny standing rather than denying claims on their merits).
At the initial stage, the requirements for a claimant to demonstrate constitutional standing are very forgiving at the federal level. In general, any colorable claim on the defendant property is sufficient. See United States v. One Lincoln Navigator, 328 F.3d 1011 (8th Cir.2003) (claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy; threshold burden is not rigorous; a claimant need not prove the underlying merits of the claim; a claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property.); United States v. $515,060.42 in U.S. Currency, 152 F.3d 491 (6th Cir.1998)(to establish Article III standing, a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property; a claimant need not prove the merits of the underlying claim, but he must claim a facially colorable interest in the seized property; court further stated that colorable claims which confer standing include the most obvious type of interest in seized property, an ownership interest; property interest less than ownership may also be sufficient to create standing); United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1375 (5th Cir.1986) (claimant must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement); United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars, 792 F.2d 1470, 1473 (9th Cir.1986) *753 (to have standing to challenge a forfeiture action, a claimant must claim to own the article or merchandise or to have an interest therein).
For example, in United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538 (11th Cir.1987), the United States Court of Appeals for the Eleventh Circuit held that a claimant does not need to own the property in question to have standing to contest its forfeiture. A lesser property interest, such as a possessory interest, is sufficient to establish standing in a forfeiture proceeding. Id. at 1544.
There is no disagreement that the ultimate issue in a forfeiture proceeding is to establish the source of the property or money. But this cannot be the issue to be decided at a hearing on standing or at the preliminary adversarial hearing stage. Pinecrest and Homestead recognize that Toney and Chuck do not have to prove their cases to establish standing, yet that is precisely what they have required them to do.
For example, Pinecrest proposes that Toney produce records regarding real estate transactions and bank records to show that he had been in lawful possession of the currency.[7] This is exactly the kind of evidence that may be persuasive at the forfeiture trial. But, at this early stage in the proceedings, Chuck and Toney need not be subjected to a mini-trial on the merits.

IV. Timeliness of Adversarial Preliminary Hearing
We next turn to the issue of the timeliness, or rather the untimeliness of the adversarial preliminary hearings afforded to Chuck and Toney. In Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991), to ensure that due process would timely be afforded to persons whose property had been seized and to cure the deficiencies of the Act, the court mandated that:
After the ex parte seizure of personal property, the state must immediately notify all interested parties that the state has taken their property in a forfeiture action; and that they have a right to request a post seizure adversarial preliminary hearing. If requested, the preliminary hearing shall take place as soon as is reasonably possible to make a de novo determination as to whether probable cause exists to maintain the forfeiture action; and to determine whether continued seizure of the property is the least restrictive means warranted by the circumstances to protect against disposal of the property pending final disposition. Again, as with real property forfeiture, this initial state should be expeditiously completed, and we anticipate that the adversarial preliminary hearing if requested, will take place within ten days of the request.
Id. at 965-66. In response to this mandate, Florida's forfeiture statute provides that an adversarial preliminary hearing is to be held within ten days after the request is received or as soon as practicable thereafter, according to section 932.703(2)(a), Florida Statutes.
In Toney's case, July 5, 2001, was the tenth day after the court received the request for an adversarial preliminary hearing. The hearing was delayed until July 24, 2001 because of court scheduling issues. In Chuck's case, he made the request for the adversarial preliminary hearing on November 27, 2001. Homestead notified the court in writing that a hearing should be scheduled no later than December *754 10, 2001, "to avoid the possibility of dismissal." The trial court scheduled the hearing for December 17, 2001. The hearing was eventually held on December 19, 2001, after the parties agreed to continue the hearing to that date.
There is precedent for excusing procedural errors in forfeiture cases. See State Dep't of Natural Res. v. In re Forfeiture of One Vessel, 617 So.2d 773, 775 (Fla. 3d DCA 1993). In the cases before us, the record reflects that the seizing agencies did everything they could to try to obtain a timely hearing. The delays in both cases were not attributable to the seizing agencies, but rather to the trial courts. In addition, the record reflects the claimants suffered no harm by these delays, other than the loss of use of the money. We are, however, totally unimpressed with the trial courts' reasons for failing to hold a hearing as directly mandated by Florida statute. In Chuck's case, where the trial court was conducting a medical malpractice trial, there was no similar statute obligating the judge to complete it within a time certain. In Toney's case, despite the judge's vacation, there is in place a system for alternate judge to cover emergencies. These types of hearings, with legislatively mandated time periods, should be considered emergencies.
Both Chuck and Toney cite to Department of Hwy. Safety and Motor Vehicles v. Metiver, 684 So.2d 204 (Fla. 4th DCA 1996), and Chuck additionally cites to Murphy v. Fortune, 857 So.2d 370 (Fla. 1st DCA 2003), in support of their positions that the complaints should be dismissed and the seized currency should be returned to them. In Metiver, the Florida Department of Highway Safety and Motor Vehicles waited ten days after receiving the attorney's request for an adversarial preliminary hearing before notifying the court. Likewise, in Murphy, the adversarial preliminary hearing was not held within the required ten days due to the fault of the Sheriff's Department. However, as noted earlier, the fault in the two cases before us lies with the two trial judges, not the seizing authorities. In both Chuck's and Toney's cases, the seizing authorities acted immediately in notifying the court of the need to schedule a hearing within the statutorily required ten days. Accordingly, because the hearings in both cases occurred as soon as practicable, as is required by the language of the statute, and Chuck and Toney have not shown that they were harmed by the trial court's short delay in conducting the hearing in each of their cases, Chuck's and Toney's complaints should not be dismissed for violation of the ten-day rule.

V. Conclusion
We fully recognize the reasons for the standing requirements and are aware of the State's concerns to protect against fraudulent claims. However, these concerns cannot overcome a person's right to a jury trial. We thus find that, although the trial court may not have believed Chuck's or Toney's explanations, the trial court should have held an evidentiary hearing on the issue of standing in Chuck's case. In Toney's case, Toney's explanation regarding how he came to own the seized currency was an issue to be dealt with at the actual forfeiture proceeding, where the claimant is afforded his or her trial and the evidence is presented and weighed. Proof issues regarding whether the seized currency is "clean" money should only come in at the trial stage. Then, if the seizing agency has sufficient evidence and can prove its case, the claimant loses, and the currency is forfeited.
However, at the preliminary adversarial hearing stage, we hold that a person entitled to notice, whose sworn and uncontradicted testimony establishes ownership of *755 the subject currency and who has never disavowed such ownership, has demonstrated a sufficient property interest to confer them standing to proceed with their claims. In addition, we hold that the ten-day time requirement for providing the adversarial preliminary hearing is mandatory, but where the seizing authority has acted immediately and the delay is caused by the court, unless the claimant can show harm, the forfeiture action should not be summarily dismissed. Accordingly, we reverse the orders under review in both Chuck's and Toney's cases. In Chuck's case, we remand for an evidentiary hearing on standing. In Toney's case, we remand for a trial on the merits.
Reversed and remanded.
COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, WELLS, and SHEPHERD, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
In each case below, the trial court found as a jurisdictional fact that the respective appellant had no cognizable interest in the funds in question and thus had no "standing" or right even to participate in the forfeiture proceeding, much less to be awarded money he does not own. Because these determinations followed fair hearings and are supported by ample  indeed overwhelming  evidence, an appellate court has no choice, under the law, but to affirm the consequent judgments. I have no choice, in conscience, but to dissent from the court's failure to do so.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Specifically, the trial court stated, "There are many cases on there. If you are in the middle of a malpractice case, then you have to immediately interrupt a malpractice case and immediately hear a forfeiture case? Is there anything on that?"
[3] Chuck and Grant are both Jamaicans. In Toney's case, the record does not reveal the race or ethnicity of Lakeisha Thomas and Omar Jackson.
[4] A "forfeiture proceeding" is "a hearing or trial in which the court or jury determines whether the subject property shall be forfeited." See § 932.701(2)(g), Fla. Stat. (2003). A "claimant" is a party who has a "proprietary interest" in the property and "has standing to challenge such forfeiture." See § 932.701(2)(h), Fla. Stat. (2003). As we have previously noted, an "adversarial preliminary hearing" is "a hearing in which the seizing agency is required to establish probable cause," for the seizure. See § 932.701(2)(f), Fla. Stat. (2003). At the adversarial preliminary hearing, the court determines "whether there is probable cause to believe that the property was used ... in violation of the Florida Contraband Forfeiture Act." See § 932.703(2)(c). Thus, at the adversarial preliminary hearing stage, the person challenging the probable cause is not an actual "claimant" until he or she prevails at the hearing and proceeds to the actual forfeiture hearing.
[5] According to David B. Smith, PROSECUTION AND DEFENSE OF FORFEITURE CASES, ¶ 17.02, 17-17 and 17-18, vol 2. (2003), this erroneously creates a new standing requirement in seized currency cases and confuses standing with the ultimate merits of the claim. Smith further notes that Fraser's standing requirement effectively reversed the Florida Contraband Forfeiture Act's burden of proof provisions and places the burden on claimants in seized currency cases because now, in having the burden of proving the "bona fide ownership" of the seized property, the claimant has to prove to the court that the seized money is clean and not subject to forfeiture to gain the right to contest the forfeiture case. We do not think that Fraser goes so far.
[6] "In a civil case, when a defendant wishes to contest the existence of a factual basis for the exercise of long-arm jurisdiction over him or her, the litigant files a motion to dismiss for lack of personal jurisdiction, and supports the motion with an affidavit stating the facts relevant to personal jurisdiction. 554 So.2d at 502. If the plaintiff wishes to contest the defendant's version of the facts, the plaintiff must file an opposing affidavit. Id. If the two affidavits can be reconciled, the court makes a ruling without an evidentiary hearing. Id. at 502-03. If the two affidavits cannot be reconciled, then the trial court conducts an evidentiary hearing to decide the issue of personal jurisdiction. Id."
[7] Toney had testified that he did not keep records on properties he looked at but did not purchase. He further testified that the seized money was not kept in the bank.